McKinnon and others vs. Vollmar and another.

McKINNON and others, Respondents, vs. VOLLMAR and another, Appellants.

*October 21 — November 5, 1889.*

*Vendor and purchaser of land: Fraud: Rescission of sale: Recovery of consideration: Form of action: Agency: Delegation: False representations.*

1. Where the purchase of land was induced by fraud the purchaser may rescind the sale and recover the consideration paid in an action for money had and received.
2. Where the wrong land is pointed out to intending purchasers, whether intentionally or not, by an agent of the vendors, and the purchase is made in the belief that the land purchased was shown, the consideration paid may be recovered, although the vendors did not know, when it was paid, that the wrong land had been shown.
3. An agent employed to sell land may employ a subagent to point out the land to intending purchasers.

4. If such subagent directs another person to show a particular tract of land to the purchaser as being the one in question, and he does so, the principal is bound by such act.

5. Where the purchase of land is induced by the vendor's misrepresentation of the amount of timber thereon, the consideration paid may be recovered, although the vendors did not know, at the time, that such representation was false.

APPEAL from the Circuit Court for *Wood* County.

The action is for money had and received by the defendants for the use of the plaintiffs *McKinnon* and *Derfus*, and of James Redmond, now deceased, the intestate of the plaintiff *Helen Redmond*. The complaint is in the usual form of complaints in actions for money had and received. No particulars of the claim are stated therein, and no bill of particulars was given or demanded. Except as to the allegations of the copartnership of the defendants, the death of James Redmond, and the appointment of the plaintiff *Helen Redmond* as administratrix of his estate, the answer is a general denial. The cause was tried before a jury, and a special verdict returned.

The transactions out of which the alleged cause of action arose, as the same were disclosed on the trial, are as follows: The defendants were the owners of 200 acres of land in Ashland county, Wisconsin. They purchased the same in 1884 on the faith of the sworn statement of one Greeves and one Goodwin to the effect that they had personally examined the lands and estimated there were thereon 2,200,000 feet of pine, and that such estimates were true and correct to the best of their knowledge and belief. Soon after the purchase, the defendants authorized one Seibert, who resided at Marshfield, Wis. (where the defendants also resided), to sell the land for them, and agreed to pay him a commission for doing so. Seibert thereupon opened a correspondence on the subject with the plaintiff *Derfus*, who, together with the plaintiff *McKinnon* and James Redmond, the intestate

of the plaintiff *Helen Redmond*, resided at Chippewa Falls. Several letters passed between Seibert and *Derfus* on the subject of a sale of the property to the latter, after which *Derfus* visited Marshfield, and had interviews on the subject with Seibert and the defendants. The latter showed him the estimates of the amount of pine on their land made by Greeves and Goodwin, and, as he and Seibert testified, assured him that there were at least 2,000,000 feet of pine thereon. The defendants denied the latter statement. *Derfus* went from Marshfield, in company with Greeves, to examine the land. The defendants furnished *Derfus* a correct description thereof. On the way there, *Derfus* and Greeves were joined by one Kirwin, whom Greeves hired to accompany them. They went into camp before reaching the land, and Greeves, having to examine other lands, sent Kirwin to show *Derfus* defendants' land. Greeves instructed Kirwin to show *Derfus* a particular parcel of land. Kirwin took *Derfus* upon the land Greeves directed him to show, and showed it to him as the land of the defendants. The land thus showed was not the land of the defendants, but was one mile distant therefrom, and was heavily timbered with pine. Neither Kirwin nor *Derfus* knew they were upon the wrong land.

*Derfus* thereupon returned to Marshfield, and contracted with defendants, on behalf of himself, the plaintiff *McKinnon*, and James Redmond, to purchase the land for $1,800, and paid the defendants $25 on account of the purchase. Soon thereafter, pursuant to an arrangement then made, one of the defendants went to Chippewa Falls, and delivered to the plaintiffs a conveyance, duly executed by the defendants, of the land so purchased. Such conveyance was made to the plaintiff *McKinnon* and James Redmond, pursuant to an arrangement between the purchasers. Thereupon the purchasers paid such defendant $1,775, being the balance of the purchase money. Soon afterwards the pur-

chasers went upon the land to make preparations for log-
ging thereon, and then ascertained for the first time that
there was little or no merchantable pine timber on it, and
that Kirwin had shown *Derfus* the wrong land.

Immediately after making this discovery, the grantees
in the conveyance above mentioned, *McKinnon* and Red-
mond, and their respective wives, executed a conveyance of
the land in due form to the defendants, tendered the same
to them, and demanded that they refund the $1,800 thus
paid for the land. Defendants refused to accept the deed
or refund the money. On the trial, the plaintiffs brought
the conveyance thus tendered into court, and deposited it
with the clerk for the defendants and subject to their order.

The special verdict and proceedings thereon are as fol-
lows:

" (1) Did the defendants or George Seibert employ
Greeves to show *Derfus* the lands? *Answer.* Yes. (2) If
you answer the first question 'Yes,' state which of them so
employed Greeves. *A.* Seibert. (3) If you answer the first
question 'Yes,' then did Greeves employ Martin Kirwin to
show *Derfus* the land? *A.* Yes. (4) Did Kirwin show
*Derfus* the land actually sold by defendants to plaintiffs, or
other lands? *A.* Other lands. (5) If you answer the fourth
question that Kirwin showed *Derfus* lands not purchased,—
the wrong lands,— then did *Derfus*, on the faith of infor-
mation received at that time, purchase the lands? *A.* Yes.
(6) If Kirwin showed *Derfus* the wrong lands, did he do
so intentionally or by mistake, which? *A.* By mistake.
(7) Did Greeves direct or induce Kirwin to show *Derfus*
the wrong lands? *A.* Yes. (8) Did the plaintiffs purchase
the lands in question of defendants, believing that they
were the same lands shown to *Derfus* by Kirwin? *A.* Yes.
(9) Did plaintiffs pay defendants $1,775 for the lands, under
a mistake on the part of the plaintiffs as to the location of
the lands? *A.* Yes. (10) Did the defendants make any

statement to *Derfus*, before the sale was made, as to how much pine timber there was on the lands, on which plaintiffs relied in making the purchase? *A.* Yes. (11).If you answer the last question, 'Yes,' then were such statements true or false? *A.* False. (12) Did defendants furnish *Derfus* with a correct description of the lands before he went to Marshfield to examine them? *A.* Yes. (13) How much pine timber was there at the time of the purchase on the lands described in deed from defendants to plaintiffs,— Ex. A? *A.* None. (14) Was the sale of the lands in question made under a mistake on the part of both plaintiffs and defendants that *Derfus* had been shown the lands conveyed by the deed,— Ex. A? *A.* Mistake of both parties."

On receipt of said verdict, defendants' counsel moved the court to set the same aside as being contrary to the evidence, which motion was denied. Defendants' counsel then moved the court for judgment for the defendants upon said verdict, which motion was denied, and an exception then and there taken to the denial of each of said motions. Counsel for plaintiffs then moved the court for judgment upon said verdict, which motion was granted, and judgment rendered in favor of the plaintiffs and against the defendants accordingly, to which ruling defendants excepted. Judgment was thereupon entered upon said verdict in favor of the plaintiffs, from which this appeal is taken by the defendants.

For the appellants there was a brief by *Cate, Jones & Sanborn*, and oral argument by *D. Lloyd Jones*.

For the respondents there was a brief by *Jenkins & Jenkins*, and oral argument by *John J. Jenkins*.

LYON, J.    I. At the close of plaintiffs' testimony, the defendants moved for a nonsuit. The motion was denied. This ruling is claimed to be erroneous for the alleged reason that the only remedy of the plaintiffs is by a suit in

McKinnon and others vs. Vollmar and another.

equity, and that, under the facts of the case, an action for money had and received, to recover the consideration paid for the land, cannot be maintained. The reason thus assigned is unsound. It might be otherwise were this an action to rescind a conveyance of land, or to compel the execution of one. But this is not such an action. The only conveyance involved has already been rescinded, so far as the plaintiffs could rescind it, by the tender to the defendants of a sufficient conveyance of the land in question, and the deposit of such conveyance in court for the defendants. The plaintiffs have done all they can do to place the parties *in statu quo;* and all the defendants have to do to accomplish that result is to accept such conveyance and refund the purchase money. There is nothing in the case which calls for the exercise of the peculiar and extraordinary jurisdiction of a court of equity. The controlling question in the case is whether the defendants ought to refund the consideration they received for the land. If they ought, such consideration can be recovered in an action for money had and received. *Ela v. Am. M. U. Ex. Co.* 29 Wis. 611. We conclude, therefore, that if the plaintiffs are entitled to recover such consideration they may recover the same in this form of action.

II. We now proceed to consider whether the findings of the jury are supported by the testimony. That there is sufficient testimony to support most of the findings is too clear for argument. A few of them only may be open to some doubt as to whether the testimony sustains them. These will be briefly noticed.

The *sixth* and *seventh* findings are to the effect that Greeves directed Kirwin to show *Derfus* the wrong land, and that he did so by mistake; that is to say, in the belief that he was showing defendants' land. The finding is not that Greeves was mistaken in that particular, and it is quite

evident from the testimony that he was not.   In this view
of the findings, they are supported by the testimony.

The *thirteenth* finding is that there is no pine timber on
the lands sold by defendants to plaintiffs.   This manifestly
means no merchantable pine timber.   There is considerable
testimony that such is the fact.

The *fourteenth* finding is that the purchase and sale of
the land was made under a mistake on the part of all the
parties, in that they supposed *Derfus* had been shown the
land conveyed by defendants to *McKinnon* and Redmond.
It seems to us that this is the unavoidable inference from
all the testimony.   It certainly was a mistake on the part
of plaintiffs; and, if not so on the part of defendants, it
was something worse.   It is proper to say, however, in this
connection, that the evidence casts no imputation of actual
fraud upon the defendants.   It contains no suggestion that
they knew, when they made the conveyance and received
the consideration, that the wrong lands had been shown
*Derfus;* and they are not to be censured because they re-
fuse to refund the consideration until their liability to do
so shall be determined judicially.

Our conclusion on this branch of the case is that all of
the material findings are supported by the testimony.

III. The only remaining question to be determined is,
Do the facts found by the jury, and the undisputed facts
not so found, support the judgment?

We understand the law of this case to be that if the
wrong land was pointed out to *Derfus*, whether intention-
ally or not, by an agent of the defendants, and the plaint-
iffs purchased believing that the right land had been shown
*Derfus*, they may recover back the consideration paid
therefor, although the defendants did not know, when the
consideration was paid, that *Derfus* had been shown the
wrong land, and although they made no representation to

the purchasers of the amount of pine on the land; but if the person so showing the land was not the agent of the defendants, all other circumstances being as above supposed, the defendants are not liable in this action. This is the doctrine of *Law v. Grant*, 37 Wis. 548. Hence it becomes important to ascertain whether the person who showed *Derfus* the wrong land was or was not the agent of the defendants in that behalf.

The jury did not find that Seibert was the agent of defendants to sell their land, but the undisputed evidence establishes the fact that he was. The jury found that Seibert employed Greeves to show *Derfus* the land. Was Greeves the agent of the defendants? The answer depends upon the question of Seibert's authority to employ a sub-agent for that purpose.

The rule is that an agent in whom is reposed some trust or confidence in the performance of his agency, or who is required to exercise therein discretion or judgment, has no authority to intrust the performance of those duties to another, and thus bind the principal for the acts of the latter, without the consent of his principal. Numerous cases illustrating this rule will be found cited in 1 Am. & Eng. Ency. Law, 368, note 4. On the other hand, an agent may appoint a sub-agent to do acts in the course of the agency which do not call for the exercise of judgment or discretion, but which are purely executive or ministerial, and the principal is bound by the acts of such subagent. *Renwick v. Bancroft*, 56 Iowa, 527; *Lyon v. Jerome*, 26 Wend. 485; Ewell's Evans on Agency, *43, and cases there cited.

In this case the showing of the land to *Derfus* was a mere executive or ministerial act, requiring no exercise of judgment or discretion, and it was therefore entirely competent for Seibert to employ Greeves to perform it. It may be observed here that the defendants knew that Greeves had been selected by Seibert to show *Derfus* the

land, and made no objection thereto. Indeed, it seemed to be a very proper appointment, for Greeves had been upon the land, and estimated the timber thereon, and of course knew the location thereof, while it does not appear that Seibert ever saw the land. For the above reasons it must be held that Greeves was the agent of the defendants for the purpose of showing the lands to *Derfus*, and the defendants are responsible for the manner in which he performed the duties of such agency.

Greeves did not in person point out the land to *Derfus*, but he did so just as effectually as though he had gone upon the land in person and told *Derfus* that it was the defendants' land for the purchase of which he was negotiating. He told Kirwin what particular tract of land he was to show *Derfus*, and Kirwin showed him such tract as he was directed to do. Thus Kirwin was the mere instrument of Greeves, and his act in thus pointing out the land was, in substance and legal effect, the act of Greeves, the agent of the defendants. Hence there is no question in the case as to whether Kirwin was or was not the agent of the defendants in what he did. Literally obeying the orders of Greeves, as he did, his acts were the acts of Greeves. An agent who, because of the trust and confidence reposed in him by his principal, cannot bind his principal by the acts of a subagent, may still employ another to do some specific act in the business of his agency, and, if such other do that act as directed, the principal is liable — not because the person performing the act is his agent, but because the act is the act of his agent, who directed it to be done.

It follows from the foregoing views that the defendants are liable for the act of their agent in thus showing *Derfus* the wrong land, although he did so through the instrumentality of Kirwin.

IV. But the judgment may be upheld on another ground. The jury found that the defendants made a statement to

*Derfus* before the sale as to how much pine timber there was on the land, that the plaintiffs relied upon such statement in making the purchase, and that the same was false. The only statement on that subject mentioned in the testimony is that there were at least 2,000,000 feet of pine timber on the land; hence it must be inferred that this is the statement which the jury found was made by the defendants to *Derfus.* Under the circumstances of the case, the plaintiffs are excusable for not verifying the accuracy of such statement by actual inspection of the land; and under the above finding, without regard to the question of agency, the plaintiffs are entitled to recover. And it is quite immaterial that the defendants did not know at the time that such statement was false. ,*Miner v. Medbury*, 6 Wis. 295.

*By the Court.*— The judgment of the circuit court is affirmed.