Gunther vs. Ullrich and others.

GUNTHER, Appellant, vs. ULLRICH and others, Respondents.

*April 14 — May 3, 1892.*

(*1, 2*) *Vendor and purchaser of land: Misrepresentation as to location: Agency: Fraud.* (*3*) *Who may rescind contract for fraud.* (*4*) *Special verdict: Ambiguous finding.*

1. The agent of the vendors having made a false statement as to the location of their lots, whereby the vendee was induced to purchase them, both the vendors and the agent are liable to the vendee for the difference between the value of the lots actually purchased and those which he was led to believe he was getting; and it is immaterial that neither the agent nor the vendors by any artifice prevented or dissuaded the vendee from making inquiry as to the true location of the lots, which he had means of ascertaining. *Mamlock v. Fairbanks*, 46 Wis. 415, and *Conner v. Welch*, 51 id. 440, distinguished.

2. The agent of the vendee of lots having fraudulently pointed out to his principal other and more valuable lots as those which would be conveyed to him, and having thereby induced him to purchase them, and the vendors, after learning of the fraud, having made the transaction their own by ratification and adoption, *it would seem* that such vendors are liable to the vendee for the damages resulting from such fraud, although there was no combination or conspiracy between them and the vendee's agent.

3. The perpetrator of the fraud by which a contract is induced has no right to rescind it.

4. A finding in a special verdict, consisting of a simple affirmative answer to an alternative question, is *held* ambiguous and uncertain, and is therefore disregarded.

Gunther vs. Ullrich and others.

APPEAL from the Superior Court of *Milwaukee* County.

This action was brought to recover against the defendants damages claimed to have been sustained by the plaintiff by reason of the alleged fraud and deceit of the defendants in respect to the location of five certain lots of land in Stanhope's subdivision No. 2, in Milwaukee county, which were exchanged by the defendants *Bing* and *Hannah Abraham* in addition to a cash payment of $1,500, for a stock of goods owned by the plaintiff, *Gunther*. *Gunther* had employed the defendant *Ullrich*, for a commission, to sell his stock of goods for $5,000; and it is charged by him, in substance, that the defendants falsely and with intent to deceive represented to him that said five lots of land, designated on a plat they exhibited to him of Stanhope's subdivision No. 2 as lots 1 and 2, in block 1, and lots 6, 7, and 8, in block 2, were situated within the limits of the city of Milwaukee, and were located upon a certain street known as the "Whitefish Bay Road," and were valuable, and worth the sum of $700 each, or $3,500 in all; that *Ullrich* took the plaintiff in a carriage to said Whitefish Bay road, and to a place thereon known as "Lueddeman's Farm and Summer Resort," and there pointed out to him certain valuable lands near the said farm and resort, and then and there falsely and fraudulently represented to him that said lots described on said plat of subdivision No. 2, which had been given to the plaintiff, were upon the lands so pointed out; that confiding in the truth of such representations, and in reliance thereon, he sold and delivered his said stock of merchandise to the defendants *Bing* and *Louis Abraham*, making a bill of sale thereof at their request to said *Bing* and *Hannah Abraham*, wife of the defendant *Louis Abraham*, the said *Louis Abraham* paying him $1,500 therefor and delivering to him a pretended deed of conveyance of said lots, purporting to have been executed by the defendants *Bing* and wife and said *Louis* and *Hannah Abraham;*

that in truth and in fact said lots were located a long dis-
tance out of said city of Milwaukee, and not on said White-
fish Bay road or near said Lueddeman's farm, as was
pointed out to the plaintiff, and said lots were not in fact
worth more than $100 each; that said deed, on account of
certain defects, was not sufficient to pass the title to said
lots, which it was alleged was in the defendants *Bing* and
*Hannah Abraham;* that the plaintiff recorded said pre-
tended deed, and upon the discovery of the alleged fraud
he tendered to the defendant *Bing* a reconveyance of the
lots to said *Bing* and *Hannah Abraham*, but he retained
the $1,500 so paid; and he claimed $3,500 damages on ac-
count of the fraud.

The defendant *Ullrich* denied making the fraudulent
statement imputed to him, and alleged that the plaintiff
had full means and knowledge with which to ascertain the
location of the lots. The other defendants admitted the
sale and delivery to said *Bing* and *Hannah Abraham* of
the stock of goods, for the conveyance of the lots in ques-
tion and the sum of $1,500, but denied all negotiations or
combination with *Ullrich* except in dealing with him as
plaintiff's agent, and alleged that they had delivered a cor-
rect and sufficient deed of the lots to the plaintiff at his
request, and that at the time of said sale the plaintiff was
fully informed of the situation of the real estate in question.

After a trial by a jury, a special verdict was found, find-
ing: (1) The defendant *Louis Ullrich* knowingly showed
the plaintiff other lots than those purchased for the lots
purchased. (2) The defendants *Sigmund Bing* and *Hannah
Abraham* took part in the negotiation for said sale or ex-
change, or in bringing it about. (3) There was no combina-
tion, conspiracy, or agreement between the agent of the
plaintiff and the other defendants to defraud the plaintiff.
(4) The defendant *Louis Ullrich*, before starting out to see
said lots with the plaintiff, represented to him that said lots

were within the city limits of Milwaukee. (5) The plaintiff parted with his stock of goods and fixtures, relying upon these representations made before starting to see the lots. The sixth question and answer are as follows: " Did *Louis Abraham or* other of the defendants aid, advise, counsel, or assist in any way the said *Louis Ullrich* in taking the plaintiff out to see the lots *or* in pointing out the wrong lots to the plaintiff? *Answer.* Yes." (7) The defendant *Louis Abraham* represented to the plaintiff the lots in question were within the city limits of Milwaukee. (8) The plaintiff parted with his stock of goods and fixtures relying upon such representation. (9) The representations made by said *Ullrich,* stated in the fourth finding, were made by him in the hearing and with the knowledge of *Louis Abraham.* (10) The value of the plaintiff's stock of goods, etc., September 30, 1889, was $5,000. (11) The plaintiff did not, after knowing that the lots in question were not within the city limits of Milwaukee, go on and consummate or ratify said exchange of property, or accept said lots. (12) The defendant *Louis Abraham,* before the commencement of this action, tendered back to the plaintiff a rescission of said contract and a return of his property. (13) The plaintiff refused such proposition. (14) The defendant *Louis Abraham* did not deliver to and leave with the plaintiff a printed plat showing the location and situation of the lots in question prior to the exchange of the property in question. (15) None of the defendants by any artifice prevented or dissuaded the plaintiff from making inquiry with reference to the true location of said lots. (16) (Immaterial.) (17) The plaintiff did have the present means of information as to the location of these lots on or before October 1, 1889. (18) The lots shown to the plaintiff by said *Ullrich* on or before September 30, 1889, were worth $700 apiece. (19) The value of the five lots in question in Stanhope's subdivision No. 2, September 30, 1889, was $1,000.

Gunther vs. Ullrich and others.

The plaintiff moved the court for judgment in his favor upon the special verdict, which was denied, and judgment ordered for defendants. To these rulings the plaintiff excepted, and from a judgment rendered in favor of the defendants he appealed.

For the appellant there was a brief by *McKenney & Wambold*, and oral argument by *J. C. McKenney*. They cited *Castenholz v. Heller*, 82 Wis. 30; *Bird v. Kleiner*, 41 id. 134; *Davis v. Nuzum*, 72 id. 439; 2 Pomeroy, Eq. Jur. secs. 887, 895, 904, 908; Cooley, Torts, 488; *Middleton v. Jerdee*, 73 Wis. 39; *Bennett v. Judson*, 21 N. Y. 238; *Law v. Grant*, 37 Wis. 548; *Booth v. Ryan*, 31 id. 45; *Kuelkamp v. Hidding*, id. 503; *Smith v. Richards*, 13 Pet. 26; *Miner v. Medbury*, 6 Wis. 295; Willard, Eq. Jur. 157, 170; *Mamlock v. Fairbanks*, 46 Wis. 415; *McKinnon v. Vollmar*, 75 id. 83, 90.

For the respondent *Louis Ullrich* there was a brief by *Cox & Cox;* for the respondents *Sigmund Bing, Louis Abraham*, and *Hannah Abraham* there was a brief by *Turner & Timlin;* and the cause was argued orally by *W. H. Timlin*. They cited *Parker v. Moulton*, 114 Mass. 99; *McKindly v. Dunham*, 55 Wis. 515; *Mamlock v. Fairbanks*, 46 id. 415; *Connor v. Welch*, 51 id. 440; *Long v. Warren*, 68 N. Y. 426; *Slaughter's Adm'r v. Gerson*, 13 Wall. 379; *Brown v. Leach*, 107 Mass. 364.

PINNEY, J. The finding in answer to the sixth question, owing to the manner in which the question was framed, is ambiguous and hopelessly uncertain. No force or effect can be given to this finding, if such it may be called, for it really finds nothing at all. The question being in the alternative, the affirmative answer may be applied as fairly to the innocent act of taking out the plaintiff to see the lots proposed to be conveyed as to the fraudulent and reprehensible act of knowingly pointing out to him the wrong

lots. This question and answer must therefore be disregarded, and the question to be determined is whether, upon the facts found and the uncontradicted evidence, judgment ought to be given in favor of the plaintiff instead of against him. *Farwell v. Warren*, 76 Wis. 528–540, and cases cited.

The verdict finds that *Ullrich* knowingly showed the plaintiff other lots than those purchased; that, before going out to see them, he represented to the plaintiff that the lots in question were within the city limits of Milwaukee; that the defendant *Louis Abraham* also represented to the plaintiff that the lots were within the city limits of Milwaukee; and that the plaintiff parted with his stock of goods and fixtures relying upon the representations made by *Ullrich* before starting to see the lots, as well as upon the representations made by *Louis Abraham;* and that the latter heard *Ullrich* make the same representations to the plaintiff which he himself made. It is found that none of the defendants by any artifice prevented or dissuaded the plaintiff from making inquiry in reference to the true location of the lots, and the plaintiff had present means of information as to their location on or before October 1, 1889, the date of making the exchange; that, after learning that the lots were not within the city limits of Milwaukee, he did not consummate or ratify the exchange of property, or accept said lots.

Under the undisputed evidence and the facts found by the jury, after excluding the defective question and answer, we think that the plaintiff is entitled to judgment for the difference in value between the lots pointed out to him on the extreme city limits in a northeast direction, and the lots the defendants *Bing* and *Abraham* and wife attempted to convey to him, which were about two miles and a half beyond the city limits, and that distance north of the lots so pointed out by *Ullrich*. The defendants knew very well where the lots they owned were situated; at least they are

chargeable with such knowledge, and there is no pretense that they did not have it. They were worth only $200 each, and were two miles and a half beyond the city limits, instead of being in the city limits and worth $700 each, as represented; the total difference in value being as $1,000 to $3,500. The uncontradicted evidence shows that *Louis Abraham* was the agent of his codefendants *Bing* and *Hannah Abraham*, his wife, in negotiating the exchange of property in question, and they are liable to respond for any damages resulting from the fraudulent misrepresentations of their agent in respect to the situation of the lots to be conveyed to the plaintiff by them in exchange for the stock of goods. This is familiar doctrine (*McKinnon v. Vollmar*, 75 Wis. 82–90; *Bennett v. Judson*, 21 N. Y. 238; *Mayer v. Dean*, 115 N. Y. 556, 561, and cases cited); and it matters not whether the misrepresentation was intentional or not (*Cotzhausen v. Simon*, 47 Wis. 106; *Davis v. Nuzum*, 72 Wis. 439; *Bird v. Kleiner*, 41 Wis. 134–138; *Middleton v. Jerdee*, 73 Wis. 39; *Montreal R. L. Co. v. Mihills*, 80 Wis. 541–560). As was stated in *Cotzhausen v. Simon*, 47 Wis. 106, " It is immaterial whether the defendant made the representations wilfully or intentionally or not, for he had no right to make even a mistake in facts so material to the contract, except under the penalty of responding in damages;" and in the case of an agent, if the principal is liable for such misrepresentations of his agent, very clearly the agent is also liable, and the same result follows in law as if there had been a fraudulent combination or conspiracy between the agent and his principals.

It was strongly contended, both on the part of *Ullrich* and of his codefendants, that under the decision of this court in *Mamlock v. Fairbanks*, 46 Wis. 415, as applied in the subsequent case of *Conner v. Welch*, 51 Wis. 440, as the plaintiff had the present means of information as to the location of the lots, and the defendants did not by any artifice prevent

or dissuade him from making inquiry in reference to the true location of them, they are therefore not liable. This contention entirely overlooks and ignores the obvious distinction between the case they rely on and the case of *Castenholz v. Heller, ante,* p. 30, and other like cases herein cited, in which it is held, in substance, that where the vendor undertakes to state or point out to a purchaser the boundaries or situation of the property he is selling, he is under obligations to state or point them out correctly and has no right to make a mistake except upon the penalty of responding in damages. If there had been no positive statement made to the plaintiff as to the situation or location of the lots, and he had been left to his own devices to apply and act upon the means of knowledge he possessed, then the rule for which counsel contends might well be applied; but it is too well settled in this state to require discussion that where the proposed purchaser is ignorant of the location he has the right to rely upon a positive statement made by the vendor in that respect, and hold him responsible if it proves untrue, although there was no intentional misrepresentation.

It would seem that the liability of the codefendants of *Ullrich* may be properly rested as well upon the ground that, after the grossly fraudulent acts of *Ullrich* which induced the contract, and inhered in it, had become known, the advantages of which could inure only to his codefendants, they made his fraudulent acts their own by ratification and adoption. The defendants *Bing* and *Abraham* and wife, nevertheless, insisted and still insist upon and retain the benefits and advantages of the transaction thus fraudulently induced, and sent to the plaintiff, by *Ullrich,* a corrected deed of the lots situated two and a half miles beyond the city limits, which, it is said, he declined to accept, and the defendants procured it to be recorded on the 19th of October, 1889. It is found by the jury that the

Gunther vs. Ullrich and others.

plaintiff refused to accept the lots. The former deed, it appears, was not signed by *Hannah Abraham* or *Mrs. Bing* in person, but by their respective husbands in their names, and there was no grantee named in it. It is found that *Abraham* tendered a rescission and return of the property before the action was brought, but at what particular time is not stated. We do not understand that it is the right of a party, by whose fraud a contract has been induced, to rescind it. The right of rescission is the right only of the victim, and not of the perpetrator, of the fraud. It is clear that the defendants *Bing* and *Louis* and *Hannah Abraham* have made the transaction in all its material features their own by ratification and adoption, and they are therefore bound by and answerable for the consequences of the misrepresentations made to the plaintiff as to the location and situation of the lots. It is now no answer for them to urge that the jury found that there was no combination, conspiracy, or agreement between them and the plaintiff's faithless agent, *Ullrich*. There is that in the case which, as a matter of law, supplies its place. *Mayer v. Dean*, 115 N. Y. 556, 561, and cases cited. But it is not necessary to rest the liability of the defendants on this ground.

The case, as against *Ullrich*, is too clear, in the light of well-settled rules, to require discussion.

For these reasons we must hold that the superior court should have rendered judgment upon the special verdict in favor of the plaintiff, and against the defendants, for $2,500 and the costs of the action.

*By the Court.*— The judgment of the superior court of Milwaukee county is reversed, and the cause is remanded to that court to render judgment accordingly.