MATTESON, Appellant, vs. RICE, Respondent.

*December 19, 1902—January 13, 1903.*

*Landlord and tenant: Warranty: Agency: False representations by agent: Authority of agent: "Scope of the agency."*

1. A warranty is always a representation, but the reverse is not necessarily true, the first being a more comprehensive term.
2. A landlord authorized the janitor of his flat building to exhibit the premises to prospective tenants, execute leases, place the tenant in possession, and collect the first month's rent. The tenant was induced to enter into lease of a flat by the janitor's false assurance, not amounting to a warranty, that a wall, not open to inspection, between the flat leased and an adjoining building, was fire proof. The janitor had no express authority to make representations or warranties. *Held*, that the landlord was liable to the tenant for loss of goods by fire, the representations in question being so far within the scope of the business of the agency as to be deemed authorized.

:3. The fact that the agent believed the representations to be true, and had no intention to deceive the tenant, would not affect the landlord's liability.

4. While an agent may not do everything his principal may do, where a representation by the agent directly appertains to and becomes a necessary part of the transaction under consideration, and an inducement to its acceptance by the party to whom the representation is made, it may be said that such matter falls "within the scope of the agency."

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Reversed.*

This is an action to recover damages suffered by plaintiff by reason of the alleged false and fraudulent representations of defendant's agent. The complaint sets out the facts substantially as hereinafter stated, and alleges that the representations made by the agent were made fraudulently, and for the purpose of inducing plaintiff to rent said flat. The case was tried before a referee, who made findings as follows:

"(1) That in 1897 the plaintiff leased a flat contained in a building belonging to the defendant, at or near the corner of Eighteenth street and Fond du Lac avenue, in the city of Milwaukee, and occupied the same as a tenant of the defendant under and pursuant to said lease until the building, including said flat, was destroyed by fire, in December, 1898, at which time all of plaintiff's property contained in said flat was destroyed.

"(2) That plaintiff made his contract or lease with one August Klempke, who was at that time the janitor of said flat building, and employed by the defendant, and that the entire business of leasing said flat to the plaintiff, on the part of the said defendant, was attended to and conducted by the said August Klempke.

"(3) That it was a part of Klempke's duties as an employee of the defendant to show the flats in said building to prospective tenants, to tell them the amount of rent charged for such flats, and, in case of acceptance by such prospective tenants of the terms offered, to put them into possession, collect the first month's rent, and pay it over to the defendant; the subsequent rent being paid to or collected by the defendant's bookkeeper.

"(4) Adjoining the said flat occupied by the plaintiff, and' a part of the same building, was a store, also owned by the defendant. At the time the plaintiff rented said flat, he asked Klempke how it would be in case there should be a fire in said' store; and said Klempke told him (plaintiff) that there was a fireproof wall between the said store and the flat about to be rented, and which was afterwards rented, by said plaintiff' as aforesaid.

"(5) That the plaintiff relied upon said statement to the effect that there was a fireproof wall between said store and said flat, and believed the same to be true, and that he would' not have rented the said flat, or continued to occupy the same, except for said statement, and except for his belief, induced' by said statement, that there was a fireproof wall between said flat and said store.

"(6) That the partition wall between the said store and' the said flat was not a fireproof wall, and was not a wall which could be considered a fireproof wall or a fire wall, in any sense in which such term or terms could reasonably be understood, but consisted of a single thickness of brick, between upright wooden supports.

"(7) That said Klempke had no intention of defrauding the plaintiff in making said statement as aforesaid, but believed the said statement to be true.

"(8) That said partition or wall between the said store and said flat was covered with plaster on both sides, and the true character thereof was not open to examination or inspection by the plaintiff.

"(9) That had there been a fire wall or a fireproof wall between said store and said flat, as was represented by said' Klempke, the said fire probably could and would have been confined to the store building, and in that case the plaintiff's property contained in said flat would not have been destroyed.

"(10) That said Klempke was not expressly authorized' or instructed by the defendant or any one else to make any warranties or representations in regard to said building, or as to the construction of any part thereof, and that the statements made by said Klempke in reference to the character of said wall were not known to the defendant until after said fire had occurred."

The referee's conclusions were that it was not within the scope of the authority of Klempke, as defendant's agent, to make any representation or warranties respecting the construction of the building, and that there was no liability on the part of defendant by reason of such representations. Judgment was ordered for defendant. A motion to modify such findings was denied, and the report was confirmed by the trial court. No bill of exceptions was settled and the case is brought here for review on plaintiff's appeal upon the pleadings and findings.

For the appellant there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *C. F. Fawsett.*

For the respondent there was a brief by *Miller, Noyes & Miller,* and oral argument by *B. K. Miller.*

BARDEEN, J. An inspection of the complaint and findings discloses that defendant's agent, Klempke, made false representations as to the character of defendant's building. The plaintiff relied thereon. From the character of the building, it was impossible for plaintiff to ascertain the truth of such representations. Because the fact represented was not true, plaintiff suffered loss. Defendant's agent had authority to show the flats, make leases, put tenants in possession, and collect the first month's rent. He had no express authority to make any "warranties or representations" in regard to the construction of the building, and he had no intention of deceiving plaintiff, and believed the statement he made to be true.

It must be understood at the outset that we are not dealing with the question of the authority of an agent to make *warranties* for his principal. A warranty, if false, gives rise to an action on contract. That is not this case. If we understand the complaint, the plaintiff sues to recover damages because of certain false representations made by the defendant's agent. A warranty is a collateral undertaking by which

the warrantor *contracts* that certain facts in relation to the property are or shall be as he represents them. 28 Am. & Eng. Ency. of Law, 728. The same authority, on page 739, says:

"The terms 'warranty' and 'representation' are not synonymous. A warranty is always a representation, but the reverse is not necessarily true, the first being a more comprehensive term."

This case seems to have become divested of any element of contract, and turns upon the question whether the representations made by Klempke were within the apparent scope of his employment. An agent's authority to warrant, as said in *Westurn v. Page,* 94 Wis. 251, 68 N. W. 1003, must arise from express authority, or proof that the transaction is usually attended with warranty. Cases may and frequently do arise where the agent may have no authority to warrant, and yet, from the character of his agency, his principal may be held liable in tort for false representations made by him. This distinction may seem somewhat fine and inconsistent, yet it is nevertheless one amply recognized by the courts, and frequently enforced. It arises from the character and duty of the agent in relation to the particular business in his charge. The general liability of the principal is as stated in the late case of *Hoyer v. Ludington,* 100 Wis. 441, 76 N. W. 348, where the following language was used:

"There is no doubt of the general proposition that if an agent is employed to effect the sale of lands for his principal, and he does so by means of false representations in respect to the land conveyed, even without the authority or knowledge of his principal, the latter is chargeable with such fraud in the same manner as if he had known or authorized the same. *Law v. Grant,* 37 Wis. 548; *McKinnon v. Vollmar,* 75 Wis. 82, 43 N. W. 800; *Gunther v. Ullrich,* 82 Wis. 222, 52 N. W. 88. And this is especially so when the principal accepts and enjoys the benefits of the purchase. *Fintel v. Cook,* 88 Wis. 487, 60 N. W. 788. But even then 'the representation which is to bind the principal must be made in reference to the subject-matter of his agency; it must

be made while the agent is acting as such; and the making of such representation must be within the apparent scope of his authority.' Mechem, Ag. § 743."

In *Law v. Grant,* 37 Wis. 548, the rule in such cases was stated with great strictness. It was there said:

"If the agent effected it [the sale] by means of false representations or fraud of any other description, although without authority from the plaintiff to do so, and although the plaintiff was entirely ignorant that he had done so, the legal status of the plaintiff is precisely the same as it would have been had he made the false representations, or committed the fraudulent act to the same end, in person."

It seems to have been assumed that the acts done or representations made in that case were within the apparent scope of the agent's authority. The agent represented that valuable minerals had been found on the land. If the principal was bound by such representations, it is not difficult to see in this case that defendant was responsible for the representations as to the fire wall. The representation of the existence of such wall was one of the inducements that led the plaintiff to make the lease he did. In the one case the representation of a mineral discovery induced the sale, and in the other the representation of the existence of a fire wall induced the lease. The one seems to have been as much within the scope of the agent's employment as the other. The representation as to the existence of the fire wall referred to the safety and condition of the premises. If it existed, the fact was an inducement to plaintiff to make the lease he did. Suppose plaintiff had asked the agent whether the roof leaked or the plumbing was in good condition; would not the agent have had implied authority, from the fact that he stood representing the owner, to have made answer to such questions? The difficulty experienced in cases of this kind is as to the proper understanding of the phrase "within the scope of his agency." It cannot properly be restricted to what the parties intended in the creation of the agency. Nor

can the question be determined by the authority intended to be conferred by the principal. As stated in some of the cases, we must distinguish between the authority to make the representations which amount to a fraud, and the authority to transact the business in the course of which the fraudulent act was committed. Tested by reference to the intention of the principal, it might be conceded that the making of representations culminating in fraud was not within the scope of the agency; but, tested by the connection of the act with the property and business of the agency, we find a direct connection between such act and business, and that the act was done by virtue of the authority of the agent in the particular matter. See *Reynolds v. Witte,* 13 S. C. 5. The scope of the agent's authority reaches out, and permits him to do such acts and things as are directly connected with and essential to the business in hand. He may not do everything his principal may do, but where the matter in controversy directly appertains to and becomes a necessary part of the transaction under consideration, and an inducement to the acceptance of the deal by the party to whom the representations are made, then we may say that it falls "within the scope of the agency." If the principal had been present, showing his building, with a view of leasing, inquiries regarding the danger of fire, the condition of the plumbing, and the like, from the lessee, would have been perfectly natural and in accordance with ordinary business foresight. Any false answer material to such inquiries, and affecting the proposed tenancy, would have made the principal liable. Substitute the agent with authority to lease; how is the situation changed? The considerations mentioned were germane to the transaction. They operated as an inducement to the making of the lease, and the referee has found that, if the representations had not been made, the lease would not have been entered into. The fact that the agent had power to make the lease gave him authority to answer such ques-

tions regarding the nature and construction of the building as were not evident to the senses of a prospective tenant. Such authority arises from the nature of the transaction and the enforced reliance of the tenant upon the agent's answers. The fact that the agent believed such representations to be true, and had no intention to deceive the tenant, does not lessen defendant's liability. That question was settled early in the history of the jurisprudence of this state, and some of the cases are mentioned in *Davis v. Nuzum*, 72 Wis. 439, 40 N. W. 497. The subject is discussed in *McKinnon v. Vollmar*, 75 Wis. 82, 43 N. W. 800, where a sub-agent pointed out the wrong land to the purchaser, and where false representations were made as to the amount of timber thereon. In *Gunther v. Ulrich*, 82 Wis. 222, 52 N. W. 88, the agent of the vendors made a false statement as to the location of their lots, whereby the vendee was induced to purchase the same. The vendors were held liable for such misrepresentation by the agent, whether intentional or not. If an agent to sell has authority to point out the location of land he desires to sell, it is difficult to see why an agent to lease has not authority to describe the building and its surroundings which he desires to lease. See *Porter v. Beattie*, 88 Wis. 22, 59 N. W. 499; *Beetle v. Anderson*, 98 Wis. 5, 73 N. W. 560; *Krause v. Busacker*, 105 Wis. 350, 81 N. W. 406; *Hart v. Moulton*, 104 Wis. 349–359, 80 N. W. 599. As already suggested, such authority seems to fall naturally from the relation of the parties, the nature of the business intrusted to the agent, and the circumstances found by the referee.

In this view, the conclusions of the referee and the trial court were erroneous, and the judgment must be reversed. There being no bill of exceptions, and no finding as to the amount of plaintiff's loss, the court below is directed, if necessary, to take further testimony upon the subject, to determine the amount of such loss, and to enter judgment therefor for the plaintiff.

*By the Court.*—So ordered.