ANDRESEN, Respondent, vs. UPHAM MANUFACTURING COMPANY, Appellant.

*February 2—February 23, 1904.*

*Contracts:* Quantum valebat: *Pleadings: Sufficiency: Evidence: Delivery to third person: Findings: Costs.*

1. In an action to recover a balance alleged to be due for goods sold and delivered to defendant at its request, a complaint framed after the form of common counts is sufficient to warrant admission of evidence that the goods were delivered to a third person on account of defendant.
2. In an action on implied contract for goods delivered to a third person at defendant's request, a general finding, following the allegations of the complaint, that the sale and delivery was to defendant, necessarily involves a promise, express or implied, upon the part of defendant to pay for the property.
3. It having been conceded on the trial that a certain class of items should be deducted from the claim set forth in the complaint, and the judgment having included such items by mistake, on an appeal taken without having called respondent's attention to such items, and given him opportunity to correct the error, appellant cannot recover costs in the supreme court, although the judgment be reduced to the proper amount by that court.

VOL. 120 — 36

4. In an action for the value of goods alleged to have been deliv-
ered to a third person at defendant's request, the evidence ex-
amined, and a finding, that defendant was the purchaser of the
goods delivered by plaintiff, is *held* to be against the clear pre-
ponderance of the evidence.

APPEAL from a judgment of the circuit court for Taylor
county: LAWRENCE W. HALSEY, Judge. *Reversed.*

Action to recover a balance claimed to be due for goods,
wares and merchandise sold and delivered to the defendant
at its request. · The reasonable value of the goods so sold
and delivered was alleged to be $572.30, the amount paid
$14.60, and the balance due $557.70, for which latter sum,
with interest from October 11, 1899, judgment was de-
manded. Defendant, for an answer, pleaded a general de-
nial.

The case was duly sent to a referee to hear, try and deter-
mine. Upon the hearing plaintiff, under objection, intro-
duced evidence showing or tending to show that one A. R.
Gates, while performing a logging and tie contract with de-
fendant, was authorized by its agent, one W. G. Hinman,
duly empowered in the matter, to purchase goods of plaintiff
on its account, and that pursuant thereto the goods referred
to in the complaint, less $2, were at the request of said Gates
delivered either to him or to others upon his order; that no
part thereof came to the actual possession of defendant; that
except for $14.60 in value, of goods returned, no payment
has been made to plaintiff; and that the balance of $555.70
became due and payable October 11, 1899. The referee
found accordingly. The findings were confirmed by the
court. Judgment was rendered pursuant thereto, and de-
fendant appealed.

For the appellant there was a brief by *Schweppe & Urqu-
hart,* and oral argument by *E. H. Schweppe.*

For the respondent there was a brief by *A. W. Sanborn,*
attorney, and *Allan T. Pray,* of counsel, and oral argument
by *Mr. Pray.*

MARSHALL, J.   Appellant contends that the complaint, which was framed after the form of common counts, was insufficient to cover the element of delivery of goods to Gates on account of appellant, and that all evidence to establish the cause of action, so far as it depended on such element, was improperly received.   Such contention is based on *Smith v. Leland,* 2 Duer, 497, and authorities depending thereon. That case was decided in New York some fifty years ago, before the scope of the code, as to requiring the complaint to contain a statement of the facts constituting the plaintiff's cause of action, was definitely established.   The court there, in effect, held that the common-law method of pleading by use of the common counts was abolished by the statute.   It was not suggested but that a delivery to one person upon the authority of another, and upon his account, was in legal effect a delivery to such other, and that aside from the restrictions of the code the sale and delivery were pleadable according to their legal effect by the use of the *indebitatus assumpsit* common-law form; but it was said that since the code called for a statement of facts as distinct from legal conclusions, facts could no longer be pleaded according to their legal effect.   The same court, about the same time, in *Lienan v. Lincoln,* 2 Duer, 670, condemned the use of the common counts under the code, saying that an allegation that defendant received money or property to the use of the plaintiff was no longer sufficient to permit proof of the facts in that regard; that a use springing from the facts, giving rise to a cause of action in favor of the plaintiff, was a legal result or conclusion from facts, and that the code required the facts, not the conclusion to be stated.   Those early decisions were followed in some jurisdictions, as counsel for appellant discovered.   *Williams v. Chadbourne,* 6 Cal. 559; *Kelly v. Johnson,* 5 Wash. 785, 32 Pac. 752.   Some textwriters have also made the mistake of dignifying such decisions as authoritative.   1 Estee's Pl. § 710.

A broader view of the code obtained in New York as early as 1857, as indicated by *Rogers v. Verona,* 1 Bosw. 417, cited by respondent's counsel, where it was distinctly held that facts such as those relied upon here for a cause of action were pleadable by the use of the common-law form, and that the code was not intended to and did not abrogate that mode of pleading. The case upon the trial was dismissed on the supposition that *Smith v. Leland* was a ruling authority. There is no room for controversy but that the later case is the correct one. In the recent edition of Wait's Law & Pr. vol. 3, p. 277, it is said:

"There was at one time some difference of opinion upon the question whether the code did not abolish common counts, and require every cause of action to be stated specially. . . . But it is now entirely settled that the mode of declaring upon the common counts is proper now, as it was before the code."

See 4 Ency. Pl. & Pr. 611, to the same effect. This court has several times so decided. *Grannis v. Hooker,* 29 Wis. 65; *McKinnon v. Vollmar,* 75 Wis. 82, 43 N. W. 800. The theory of those decisions is that the code calls only for a statement of ultimate facts; that it excludes mere legal conclusions and matters of evidence; that an ultimate circumstance may and often does have two aspects: that of a conclusion of fact, and a conclusion of law; in which case it is not a mere matter of law falling within the rule of exclusion, but may properly be viewed in its aspect as a fact and be pleaded as such, the minor circumstances being treated as evidentiary thereof. *Harpending v. Shoemaker,* 37 Barb. 270, 291. The rule is well established now, that in such cases facts may be pleaded according to their legal effect. 12 Ency. Pl. & Pr. 1023; *South Milwaukee Co. v. Murphy,* 112 Wis. 614, 88 N. W. 583; *Miles v. Mut. R. F. L. Asso.* 108 Wis. 421, 427, 84 N. W. 159.

Many illustrations found in the decisions of this court, of the method of pleading above indicated, might be given. In

*Frankfort Bank v. Countryman,* 11 Wis. 398, it was held
that all the esentials to the liability of an indorser of com-
mercial paper can properly be pleaded by alleging that the
paper was duly presented for payment, that it was duly pro-
tested for nonpayment, that notice thereof was duly given to
the indorser, and that the paper remained unpaid. *Cutler v.
Ainsworth,* 21 Wis. 381, is to the same effect. In *McKinnon
v. Vollmar, supra,* a sale of land by the defendants to the
plaintiff, the later being induced to enter into the transac-
tion by false representations of the former through their
agent, a timely rescission of the transaction by such plaintiff,
so far as it was possible for him to do so, and a demand for
the return of the money paid, were deemed evidentiary cir-
cumstances sustaining the cause of action stated in the form
of the common counts for money had and received by the
defendants to the plaintiff's use. In *Lessard v. N. P. R. Co.*
81 Wis. 189, 51 N. W. 321, the act of a person performed
by his agent was held properly pleaded according to the legal
effect thereof, that is, as the act of the principal. So it
seems that the ancient decision upon which counsel for ap-
pellant rely is not a ruling authority. The decisions of this
court and those elsewhere are to the contrary. The objec-
tions to evidence upon the ground of insufficiency in the alle-
gations of the complaint were properly overruled.

It is claimed that there was a controversy as to whether
defendant, by its agent, agreed to pay for the goods delivered
to Gates, and that the referee failed to decide such issue.
Counsel in that seems to overlook the general finding follow-
ing the allegation of the complaint that the sale and delivery
was to the defendant. That necessarily involved a promise,
express or implied, upon the part of defendant, to pay for the
property. The finding in regard to the matter might well
have been more specific; but since the issues were covered it
cannot well be doubted that there is no infirmity in the judg-
ment on that score.

A further claim is made that charges for money paid to Gates or upon his order to the amount of $17.25, were improperly included in the judgment, and such claim is conceded by respondent's counsel; though they insist that there is no merit in the appeal in that regard, since it was agreed upon the trial that all the items of money should be deducted from the claim set forth in the complaint, and that the omission to do so was a mere mistake that would have been promptly corrected without any appeal, had appellant called respondent's attention to the matter. That seems evident from the record. It was agreed before the referee and also before the court that all charges for money should be withdrawn from the case. In such circumstances the rule is that, while the judgment may be reduced to the proper amount in this court, that cannot avail the appellant as regards costs here. *Menz v. Beebe,* 102 Wis. 343, 77 N. W. 913, 78 N. W. 601; *Windross v. McKillop,* 98 Wis. 525, 74 N. W. 342.

The further point is urged that the decision as to authority of Hinman to bind appellant is contrary to the evidence. We shall not discuss that subject. It is sufficient in our judgment that there is ample evidence in the record tending to support the finding, and that there is no clear preponderance of evidence against the conclusion reached.

It is said that no finding was made as to what the agreement with respondent was. That is clearly a mistake, except in so far as there was no specific finding going into the details. There was the finding heretofore alluded to that the goods were sold and delivered to defendant at its special instance and request. The finding was as full as the complaint. The same rule that holds the complaint good must hold the finding good also. The finding of the legal effect of evidentiary facts, such effect being in a proper sense an ultimate issuable fact, involved, necessarily, a determination respecting the existence of all the minor circumstances upon which it depended. The failure of the court to incorporate

the decision respecting the detail facts in the findings does not constitute reversible error. It does not constitute error at all, since, as we have seen, the issues of fact, as properly raised by the pleadings, were all passed upon.

The remaining question for consideration concerns the finding that appellant, through its agent, was the purchaser of the merchandise delivered by respondent, as to whether it is contrary to the clear preponderance of the evidence. It must be conceded that if the credit was extended to Gates as primary debtor—the agreement with appellant's agent in its behalf, if one were made, being to answer for the default of the principal, to stand as security merely—no legal liability was incurred thereby, since the agreement, being verbal, is condemned by the statute of frauds. Sec. 2307, Stats. 1898. It is infrequent, where there is credible evidence that would render the determination of an issue of fact, if made by a jury, proof against attack upon appeal, that it is in serious danger of reversal, though made by the court or a referee; since elements may exist liable, legitimately, to have great weight with the latter which cannot in the very nature of things be preserved in the record. It has often been said that a clear case of error must exist in respect to a trial court's finding of fact to warrant a reversal thereof because contrary to the evidence; that to appreciate the scope of such rule one must understand that it should appear not only that the finding is against the weight of the evidence, but so clearly that way, after giving due weight to the special opportunity of the trial court for discovering the truth, as not to be reasonably explainable upon any theory other than that in some way material evidence or circumstances were overlooked or wrong rules of law were applied to the evidence. True, as has been said, in testing the correctness of such a finding it must be kept in mind that there is a wide range between clear preponderance on one side of a controversy and preponderance on the other. It is so

wide that,—when all fair doubts are resolved in favor of the trial court's decision, as they should be, having regard to the superior advantages it possesses in passing upon the credibility of witnesses and determining the weight that should be given to their evidence,—a full performance of the duty, which is never consciously omitted, to examine the evidence when the exceptions call therefor, results in so few reversals upon mere questions of fact that the labor devoted to the examination of such matters may not be fully understood. It may be that want of appreciation of how manifest the preponderance of the evidence should be against a court's findings of fact to warrant a reversal, and of the weight, in support of the findings, legitimately attributable to nonrecord elements, leads to many useless appeals. That would appear by taking note of the numerous instances of retrials here, so to speak, on mere matters of fact, and the small percentage of reversals in such cases.

Notwithstanding the obstacles above indicated, in the way of obtaining relief from a judgment because of errors in determining facts from evidence, it seems that they should be considered fully met in this case as to the finding that appellant, as principal, agreed to pay for the goods delivered to Gates. On the side of respondent, his evidence in chief, and that of Gates as well, in one aspect, is to the effect that appellant's agent so agreed. The literal sense thereof would convict appellant of being the original promisor; yet it is susceptible of a meaning that only a collateral promise was made. There is not a circumstance in the case supporting the former view, while the evidence of both respondent and Gates, in giving the details of what occurred between them and the agent, and all the evidentiary circumstances in the case, some of them being wholly inconsistent with the making of an original promise by such agent, indicate that if any promise was made it was collateral to that of Gates. We will refer to such circumstances in detail.

1. Respondent testified that Gates was represented to him by the agent as a safe man to deal with. That was material for respondent to know if he was to take Gates as his debtor, but not if appellant, who was of well known responsibility, was to stand as the original promisor.

2. Respondent later testified, when called upon to give more in detail the conversation of the agent, that the expression used by him was that appellant would "stand behind" Gates. That clearly would indicate that the promise of the agent, if any was made, was understood to be collateral.

3. When called upon to explain in detail the conversation, Gates further said his understanding was that his orders, issued to Andresen for merchandise, would be paid. That clearly indicates a collateral promise.

4. The goods, as furnished, were regularly charged to Gates, though respondent testified that he wrote on the ledger, after Gates' name, "For Upham Manufacturing Co."

5. While it was not claimed that there was any original promise on behalf of appellant to pay for anything but merchandise, respondent furnished Gates with money from time to time, as well as goods, charging all to him as debtor.

6. While there was an account for goods furnished Gates prior to the one in question, and such accounts thereafter, which were paid by appellant upon Gates' orders, the prior account was rendered as the latter's debt and paid as such upon his written order; and the later accounts were specially guarantied by appellant and paid because so guarantied, not because of any promise made in May, 1899, relied upon by respondent.

7. The account in question was first sent to appellant as a debt of Gates to respondent. Nothing was done in connection with the matter to indicate that respondent looked to the former as the primary debtor.

8. The account not being promptly paid, respondent wrote appellant, stating in substance that the agreement made by

the latter's agent was that appellant would "stand behind" Gates; that the understanding was that respondent "would have to carry him" till a specified time. That unmistakably indicates a collateral promise.

9. Some time later respondent again wrote appellant with the view, as he said in effect, of stating his case fully. Proceeding to do so, he informed appellant that its agent promised in these words: "Your company would stand behind Gates for such amounts as he might buy from me." There can be no reasonable controversy but that if such were the language used between respondent and the agent at the outset, the parties understood that an extension of credit to Gates as the primary debtor was contemplated upon the collateral promise of appellant as security.

10. Respondent, in explanation of the circumstances that he charged the merchandise to Gates instead of to appellant, said that he did so to keep the account separate. He admitted, however, that there was no account to keep it separate from, since he had none with appellant or Gates during the time the one in question accrued, nor for a long time theretofore or thereafter.

11. The agent denied unequivocally having made the arrangement with respondent claimed by him, or having had any such conversation with him as he testified to.

Thus the evidence of Andresen and Gates, as before indicated, as it appears unimpaired by that elicited upon the cross-examination, in one aspect is consistent with the theory that a collateral promise was made, which harmonizes with all the other evidence and circumstances in the case. In the other aspect it is clearly impeached by such witnesses, and by all the evidence in the case bearing on the question. So, viewing the record, we cannot escape the conclusion that the finding under consideration is against the clear preponderance of the evidence, and most decidedly so. It seems that the referee and the learned trial court must have failed to

give effect to some of the evidence, or applied, as before suggested, wrong rules thereto.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded with directions to render judgment in favor of defendant for costs.