JOHN SCHROEDER LUMBER COMPANY, Respondent, vs. STEARNS and another, Appellants.

*September 8—September 27, 1904.*

*Agency to purchase lumber: Extent of authority: Acceptance.*

1. One engaged in the business of buying and selling lumber wrote defendants that plaintiff had a quantity of No. 1 pine lath which he could buy at a certain price.   Defendants answered instructing him to ship them a certain quantity, but cautioned

him not to do so unless the lath were strictly No. 1. He replied that the lath were all right, and thereupon, on behalf of defendants, made a contract with plaintiff to purchase the quantity specified. *Held*, that he was the agent of the defendants, engaged to represent them in the purchase and duly authorized to pass upon the quality of the lath delivered.

2. Such agent having inspected the lath and, after they were loaded on the cars, having approved and accepted the shipment as being in compliance with the contract, such acceptance was binding upon the defendants.

APPEAL from a judgment of the circuit court for Ashland county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

This is an action wherein the plaintiff seeks to recover the cost of 542,800 pieces of No. 1 white pine lath, at the agreed price of $3.25 per M. It alleges that it sold and delivered to defendants this quantity of lath at the agreed price, f. o. b. cars at Ashland; that defendants are indebted to it for the cost thereof, to wit, the sum of $1,764.10; and that no part of this sum has been paid. The defendants admit having made the contract for the purchase of the lath of the kind and quality and at the price specified by the plaintiff. They allege that plaintiff shipped a large quantity of lath to them at Lac du Flambeau, Wisconsin, their place of business. Defendants further allege that the lath so shipped to them were not of the kind and quality specified in the contract, and they therefore refused to receive and accept them, and deny that there is any sum due plaintiff on account thereof.

The undisputed testimony shows that plaintiff is a corporation engaged in the lumber business at Ashland; that defendants form a copartnership under the name of Flambeau Lumber Company, doing a lumber business at Lac du Flambeau, Wisconsin; that W. E. Wooding was engaged in the business of buying and selling lumber at Ashland prior to and at the time of the transactions between the parties. On August 7, 1902, Wooding wrote the following letter to one of the defendants, a member of the firm composing the Flambeau Lumber Company:

"Ashland, Wis., Aug. 7, 1902.
*"Fred Herrick, Esq., Lac du Flambeau, Wis.:*
"The *John Schroeder Lumber Co.* has a million of No. 1 white pine lath that I can buy f. o. b. for $3.25. Do you want them? They are all right.

"Yours truly, W. E. WOODING."

To this letter defendants replied by writing Wooding under date of August 11th:

"You may ship us one half million of the *Schroeder* lath, strict No. 1 white pine. Now Wooding, if these lath are not strictly No. 1, do not send them."

On August 12th Wooding wrote the Flambeau Lumber Company as follows:

"Yours of the 11th, telling me to ship you half a million No. 1 white pine lath from the *Schroeder Lumber Co.,* at hand. I bought them for you at $3.25 f. o. b. cars here, terms sixty days, 1½ off for cash ten days from shipment. Lath are all right, and will commence shipping right away, as soon as we can get cars in."

The following contract was made the same day:

"Ashland, Wis., Aug. 12, 1902.
"Sold W. E. Wooding for Flambeau Lumber Co., of Lac du Flambeau, Wis., about 500 thousand pieces No. 1 white pine lath at $3.25 f. o. b. cars at Ashland. Terms 60 days acceptance, or 1½ off for cash 10 days from date of shipment. The above lath to be loaded out at once via C. & N. W. Ry.

"JOHN SCHROEDER LUMBER COMPANY,
"By J. A. Young, Manager.
"Accepted for Flambeau Lumber Co.,
"W. E. WOODING."

Wooding had inspected the lath as it was piled in the yards of the plaintiff at Ashland. This inspection consisted of looking at the lath as piled, without opening the bundles. Plaintiff secured cars, and directed that lath be loaded out of their yards under the contract. Mr. Wooding was apprised of the loading, and employed a Mr. Harris to attend the loading, to count the lath, to ascertain the quantity loaded and shipped.

While the first car was being loaded, Harris reported to Wooding that the lath in the pile from which they were loading had some stain, and Wooding then directed that no more be loaded from this pile, and directed him to load from other piles, which directions were followed.

On August 13, 1902, Wooding issued a written statement certifying that he had inspected, measured, and tallied the lath thus loaded and consigned to the Flambeau Lumber Company, and on August 16th he issued a like statement for the balance of the lath shipped under this contract to defendants. The consignments were shipped to defendants at Lac du Flambeau, and upon their arrival and inspection defendants refused to accept them, upon the ground that the lath were not of the kind and quality covered by the contract of purchase. The testimony as to whether the lath so shipped to defendants were No. 1 white pine lath is in conflict.

At the conclusion of the testimony, both plaintiff and defendants made motions asking the court to direct a verdict in their favor. The court denied defendants' motion and granted plaintiff's, and awarded judgment accordingly. This is an appeal from the judgment.

*John Barnes,* for the appellants.

For the respondent there was a brief by *John M. Flynn* and *Lamoreux & Shea,* and oral argument by *W. F. Shea.*

SIEBECKER, J. Appellants urge that the court erred in directing and awarding judgment in plaintiff's favor for a recovery on the contract, for the reason that the evidence shows that plaintiff had failed to fulfill its conditions. This claim involves the inquiry: Was there a delivery of the lath by plaintiff and an acceptance by defendants? The solution of this question depends upon the legal relationship existing between defendants and Wooding, who was instructed to purchase the lath.

The letter of August 7th by Wooding to defendants con-

veyed the information that the *Schroeder Lumber Company* had a large quantity of No. 1 white pine lath, which he could buy for defendants at a stated price free on board cars at Ashland, and inquired whether they wanted them. Defendants' reply on August 11th instructed Wooding to ship them a specified quantity, and gave him this direction: "Now Wooding, if these lath are not strictly No. 1, do not send them." On the following day Wooding made a purchase of about the quantity described in their letter of the previous day. Plaintiff immediately commenced loading lath from their stock at Ashland, and they claim it was of the kind and quality described in the contract. Mr. Wooding was informed of their intention to ship them to defendants under the purchase he had made for them. That Wooding was the agent of defendants in making this purchase can hardly be questioned. The correspondence between them and Wooding clearly shows that he was engaged to represent them in making the purchase of the lath. Under this arrangement, defendants clearly confided to Wooding the management of this business to be transacted for them.

It is, however, zealously argued that if the relation of principal and agent existed, it was a special one, which gave the agent no authority to accept the lath as loaded and shipped by plaintiff. Whether this agency be a general or a special one is, however, of no decisive importance in this case, for the purpose of the commission is clearly and fully shown when he was authorized to represent defendants in the transaction. Under the circumstances, it must be presumed that the agent possessed all powers commensurate with his undertaking, and "which are usually and properly exercised by agents under like circumstances." It is evident that Wooding had authority to represent his principals in this transaction, and that he was commissioned with all the powers usually and necessarily exercised by agents under like circumstances.

Viewing the situation in this light, what was the effect of

Wooding's conduct as such agent in receiving and accepting the lath shipped under the contract? As above stated, the contract of agency involved the positive instruction not to ship these lath if they were not strictly of the kind and quality specified in their letter, and which was made a condition of the contract of sale. This seems to us to expressly authorize the agent to pass upon the kind and quality of the material. If so, then plaintiff had a right to rely on Wooding's acceptance, and defendants were bound by his acts. That Wooding's acts and conduct in this respect amount to an acceptance is obvious from the facts. He inspected the lath before purchase, and was satisfied that they were of the kind and quality which defendants had instructed him to purchase, and, after receiving further information upon the subject from his representative, who attended to loading them into the cars, he issued his certificate, approving and accepting the shipment as being in compliance with the contract. His acts and conduct, under the circumstances, must be given the same effect as if defendants had personally acted in his place. Had defendants been present at Ashland, and had they done what Wooding did for them, we think there could be no question but that they would be held to have accepted the shipment. *McKinnon v. Vollmar,* 75 Wis. 82, 43 N. W. 800; *Matteson v. Rice,* 116 Wis. 328, 92 N. W. 1109; *Willard v. Buckingham,* 36 Conn. 395; *York Co. Bank v. Stein,* 24 Md. 447; Mechem, Agency, §§ 278–281.

These conclusions upon the case render other questions presented on this appeal immaterial, and any discussion of them unnecessary.

*By the Court.*—Judgment affirmed.