Palmer v. Goldberg, 128 Wis. 103.

---

PALMER, Respondent, vs. GOLDBERG, Appellant.

*March 22—April 17, 1906.*

*Fraud inducing contract: Election of remedies: Pleading: Opinions as to value: Evidence: Knowledge of falsity of representations.*

1. Where plaintiff was induced by fraud to accept a worthless note in payment for horses, his action upon such note, prosecuted to judgment and execution, was not the election of a remedy inconsistent with or barring a subsequent action against the wrongdoers for damages on account of the fraud.
2. A prayer for relief, in the later action, asking judgment for the value of the horses does not show an inconsistency with the former action, since, the note being worthless, the value of the horses is the measure of the loss caused by the fraud.

3. Ordinarily a farmer is competent to give opinion evidence as to the value of such horses as he owns.

4. Findings by the jury, to the effect that defendants combined to defraud plaintiff and that representations by which he was induced to part with his property were made pursuant to such combination and were false, are *held* to be sustained by the evidence.

5. One who makes false representations of fact to induce another to enter into a contract whereby injury to the latter may result because of such falsity, is liable for the damages caused by his conduct, regardless of whether he knew, or in the exercise of ordinary care might have known, the truth of the matter.

APPEAL from a judgment of the circuit court for Wood county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

Action to recover damages for an alleged fraud.

These are the facts material to the cause of action, as claimed: Plaintiff, by false representations made to him by defendants, was induced to take the worthless note of defendant Bain as good for $500 in payment for three horses ostensibly purchased of him by said Bain, but really for or in the interest of defendant *Goldberg.* The latter two confederated together to induce plaintiff to part with his property for such note. Precedent to the transaction, *Goldberg* was employed by plaintiff to sell three horses, one being a stallion, on commission, with the understanding that if he sold the stallion for $500 he should have a commission of $150, otherwise no commission whatever. In furtherance of the wrongful agreement between defendants, *Goldberg,* ostensibly as plaintiff's agent, presented to him defendant Bain as an ostensibly prospective purchaser, while he was in fact a mere instrument of *Goldberg* to enable the latter to get possession of the horses without consideration. Upon presenting Bain, as aforesaid, *Goldberg* represented him to be an honest, responsible person, who always paid his obligations; that he was good financially, and that the plaintiff could safely sell the horses to him on credit. He induced plaintiff not to make inquiries independently, by saying that the bank and others

where Bain resided would only make favorable reports respecting his financial standing, since they as well as himself (*Goldberg*) knew Bain to be a reliable man and one who always paid his notes. Confiding in such representations, and not otherwise, plaintiff delivered his horses to *Goldberg* for Bain, taking the latter's $500 promissory note, due in five months, indorsed by Otto Nelson, in payment therefor. Such indorser was wholly irresponsible. His participation in the matter was procured by defendants as a part of the means of carrying out their fraudulent scheme. At the due date of the note it was duly presented for payment, and payment refused, whereupon the same was duly protested for nonpayment. The representations made by *Goldberg* as to Bain's character and responsibility were affirmed by the latter. They were wholly false, and the note was entirely worthless. It was, in due time, put into judgment against maker and indorser, in a court of competent jurisdiction in Wood county, and all legal remedies exhausted to collect the same, without success. Bain's financial condition was the same when the note was given as when the efforts to collect the same were made. The plaintiff paid *Goldberg* $50 of the agreed commission, which he was not entitled to, because the one horse was not sold for $500.

Judgment was demanded: (1) That both defendants be held liable for the value of the horses; (2) that plaintiff have judgment for said value and interest, such value being $500; (3) that he have judgment against *Goldberg* for the money paid on account of commission but not earned; (4) that he have judgment against both defendants for costs; (5) and that he have such further or other judgment as might be deemed just and equitable.

Bain did not answer. *Goldberg* answered by general denial, and further, that plaintiff, with full knowledge or means of knowledge of all the matters complained of, prosecuted an action to judgment on the note, and thereby waived any right he would otherwise have to maintain this action.

There was an objection to any evidence under the complaint, which was overruled, a proper exception being saved.

The evidence showed, or tended to show, that an agreement was made between plaintiff and *Goldberg* that if the latter sold one of his horses, a stallion, for $500 he should have $100 from plaintiff as a commission, and if he sold the stallion and other horses, obtaining less than $500 for the former, he should have no commission whatever. He presented Bain as a customer for the horses, by letter pretending to know him to be financially responsible, and representing that his note for $500 could be taken for or on account of the horses without hesitation. Relying thereon, plaintiff sold the stallion and one horse to Bain for $500, taking his note therefor, and sold one horse to *Goldberg* for $125, the arrangement being made with Bain, and later shipped the three horses, by direction, to the latter. Seventy-five dollars were subsequently paid on the one horse, *Goldberg* retaining the other $50 as due him for commission. The representations as to Bain's responsibility were untrue. He and *Goldberg* were both parties to the transaction of inducing plaintiff to take the note. The note was in fact uncollectible and worthless, as alleged.

The jury found specially, in effect, thus: Defendants conspired as alleged, to obtain possession of the horses. *Goldberg* represented by letter to plaintiff that Bain was a reliable man; that his note for $500 was good and could safely be taken for the horses. Such representations were reasonably calculated to induce a person of ordinary intelligence, in the exercise of ordinary care, to do as plaintiff did. He relied thereon in taking the note. Bain was not a man of reliability and responsibility for $500 when the note was taken. *Goldberg* knew that fact when he made the representations. The delivery of the horses to *Goldberg* was procured pursuant to a preconceived plan of himself and Bain, to defraud the plaintiff. The horses were of the value of $500.

After verdict several motions and rulings were made, and

exceptions saved thereto, preserving·for consideration on ap-
·peal the questions discussed in the opinion.  Judgment was·
rendered in favor of the plaintiff on the verdict.  Defendant
*Goldberg* appealed.

For the appellant there was a brief by *Kreutzer, Bird &·
Rosenberry,* and oral argument by *M. B. Rosenberry.*

For the respondent the cause was submitted on the brief·
of *Andrew Gilbertson.*

MARSHALL, J.  For a first reason why the judgment is er-
roneous, it is contended that the action on the note is incon-
sistent with this one, and, therefore, the election to prosecute·
the former created a bar to the latter. · The first action was·
in affirmance of the contract; this action is, likewise.  It is to·
recover damages caused by the execution of the alleged and·
found conspiracy to induce plaintiff to take a worthless $500·
note in exchange for his horses.  We are referred to the test
of consistency between two actions given in *Barth v. Loeffel-
holtz,* 108 Wis. 562, 84 N. W. 846, namely: "Can the facts·
necessary to support one remedy coincide with the facts nec-
essary to support the other?"  That does not mean: Are all·
the facts necessary to support one remedy necessary to sup-
port the other? but it means this: Are the facts necessary to·
support one remedy consistent with those necessary to support
the other?  Frequently illustrations of the rule are given,
as they are in the cited case, as for instance, one may sue for·
conversion where the facts warrant it, or waive the tort and
sue on implied contract.  The former suggests unlawful with-
holding of property; the latter, the contrary.  A person may·
sue on·a contract, voidable for fraud, or sue for a rescission
on the ground of fraud and for an incidental recovery of the·
subject of the transaction, or merely sue for such recovery on·
the theory of a previous rescission.  The former suggests
continuation of the contract and acquiescence in the fraud;·
the latter remedies, repudiation thereof.  One of the atti-

tudes is obviously inconsistent with the other, therefore the assumption of either creates an estoppel or, rather, a waiver of the other.

In this case we are unable to see that the attitude of respondent in the action on the note is at all inconsistent with his attitude in claiming damages for the fraudulent conspiracy resulting in his taking the note in exchange for the horses. In the first the sale of the horses and the taking of the note were ratified. The same is true in the second action. No purpose was evidenced in the first action, nor is any in the second, to repudiate the contract of sale. The horses, from first to last, were treated as having passed irrecoverably from respondent's control, and the note as having become his property for what it was worth. The matter complained of in this action is that the note, when taken, was worthless, whereby, and on account of the fraud of the appellant and his associates, respondent lost his horses valued at $500.

Considerable significance is claimed for the circumstance that, by the prayer for relief, respondent indicated a purpose to recover the value of the horses instead of the difference between such value and that of the note. We see no serious inconsistency therein. The purpose of the pleader, plainly, was to claim the damages caused by the fraud. According to the facts stated, that is the value of the horses, since the note had no value whatever at the time it was taken.

It was suggested, there is no basis for the finding as to the value of the horses, as there is no evidence on that question. Counsel evidently overlooked the fact that it was stipulated in the case, as and for respondent's testimony, that he would testify that the horses were worth $500, and that he was as competent to give opinion evidence in respect to the matter as farmers generally are. Ordinarily a farmer is held to be competent to give opinion evidence as regards the value of such horses as he owns. The stipulation put some evidence in the record independently of the actual sale of the horses

for $500, so it cannot be said that there is no evidence to support the jury's finding.

It is further contended that there is no evidence to support the finding that the appellant and his associates combined to defraud respondent, or that the representations made to him were pursuant to any such combination, or that such representations were false. There is no need, it seems, to discuss, in detail, the matters referred to in the argument of counsel on these points. They, it seems, failed to appreciate that the only false representations upon which the case stands are contained in the letters, which there is no dispute but what appellant wrote. They hardly bear any other reasonable interpretation than one calculated to create a conviction in the mind of respondent that Bain was a man of reputed integrity and responsibility, and that no one need hesitate to take his note for $500 in exchange for property of that value. There was undisputed reliable evidence that the very opposite was the truth; that at the time the note was given Bain was regarded unfavorably, rather than favorably, as to honesty and responsibility. The evidence in that regard was given, as it appears, by a man of considerable significance in the community where the respondent had a right to expect Bain was known. He testified to having had occasion to know whereof he spoke, and that he had knowledge in respect to the matter. It is suggested by counsel that the evidence was given as regards the reputation of Bain in Marshfield, whereas the case shows he lived in Unity. We are unable to find the evidence that he so resided. The case on the whole shows that he was quite likely to have been as well known in Marshfield as anywhere. Furthermore, the witness, as has been indicated, testified that he had occasion to know the character of Bain, indicating that he had either made investigations in respect to his character and responsibility for some particular purpose, or had transactions with him or with others where such character and responsibility were involved

and thereby brought to his attention. The evidence of this witness was not met in any way. Appellant's counsel did not even cross-examine him. No evidence whatever was offered on behalf of appellant in regard to Bain's reputation or responsibility. Bain was sworn as a witness, yet he was not even asked as to his place of residence. No question was put to him, or to any witness in appellant's behalf, in regard to his standing as a business man at the time the note was given, nor did he defend against the claim made against him. So far as he was concerned the cause was permitted to go by default. It is difficult to see how the jury, under the circumstances, could have come to any other conclusion than they did. We will not take time to further discuss the evidence. In our judgment there was sufficient to support each of the findings.

Complaint is made that the court refused to submit a question covering the subject of whether the representations made were false. In our view there was no such refusal as to the false representations contained in the letters upon which the case rests. They were to the effect that Bain was a man of known honesty and responsibility. The jury were asked to find specially whether that was true or not, and did so find in favor of the respondent.

It does not seem that there is any suggestion in the brief of appellant's counsel, not heretofore referred to, which calls for special mention. There was no choice made between two inconsistent remedies. An action to recover on a contract, and one to recover damages for having been induced to enter into the contract, are not inconsistent with each other; both leave the contract undisturbable. The jury, on evidence proper for their consideration, found all the facts in respondent's favor essential to a cause of action for damages caused by an executed conspiracy to defraud: (1) The combination to injure; (2) representations in furtherance thereof to induce respondent to part with his horses in exchange for the

promissory note of Bain; (3) the falsity of such representations; (4) the reasonable reliance thereon as true in parting with the horses in exchange for the note; (5) the injury. The jury went further and found that when the representations were made they were not only untrue, but that appellant knew that fact or ought to have known it, and did not believe them himself. The latter elements were not essential. *McNaughton v. Conklings,* 9 Wis. 316; *Tobey v. McAllister,* 9 Wis. 463; *Mann v. Stowell,* 3 Pin. 220; *Beetle v. Anderson,* 98 Wis. 5, 73 N. W. 560; *Hart v. Moulton,* 104 Wis. 349, 80 N. W. 599; *Krause v. Busacker,* 105 Wis. 350, 81 N. W. 406; *Zunker v. Kuehn,* 113 Wis. 421, 88 N. W. 605; *Matteson v. Rice,* 116 Wis. 328, 92 N. W. 1109; *Kaiser v. Nummerdor,* 120 Wis. 234, 97 N. W. 932; *Standard Mfg. Co. v. Slot,* 121 Wis. 14, 98 N. W. 923.

It is often said that it is sufficient as to the element of fraud in an action for damages on the ground of fraud, that the wrong-doer "knew or ought to have known" of the falsity of his representation. That is somewhat misleading. The element of "ought to have known" has reference merely to the idea that no one should make, in contractual negotiations, representations of fact to induce another to act so that injury might result to him in case of the representations being untrue, unless he knows whereof he speaks. So he is in law held as an indemnitor for the damages caused by his conduct, regardless of whether he knew, or in the exercise of ordinary care might have known, the truth of the matter. The duty to know in such a case is positive; nothing can excuse it.

*By the Court.*—The judgment is affirmed.

CASSODAY, C. J., took no part.