KATHAN and others, Respondents, vs. COMSTOCK and others, Appellants.

*October 6—October 26, 1909*

*Contracts induced by fraud: Avoidance: False representations: Fact or opinion: Tax titles: Limitation of actions: Cancellation of deed: Judgment.*

1. One who makes representations to another of material facts for the purpose of inducing that other to enter into contractual relations with him and which are liable to accomplish the purpose without want of ordinary care on the part of such other, is bound, not merely not to act negligently, but at his peril to know whereof he speaks.
2. One not himself knowing the facts involved may reasonably act on representations by another who desires to enter into contractual relations with him, as to conditions not presently observable.
3. Where the original owner of land had been in actual possession of it during the three years following the recording of a tax deed, thereby preventing the running of the statute of limitations in favor of the deed, a representation by the holder of the deed that the statute had run in its favor, made for the purpose of inducing a conveyance by the heirs of the original owner, was not a mere legal opinion but was a false representation of a fact material to the transaction and, even though made honestly, was such a fraud as in equity would render voidable a conveyance reasonably induced thereby.

4. Where in such a case the false representation was as to one only of several tracts covered by the conveyance, but there was no evidence enabling the court to apportion the consideration paid, and defendants had refused an offer giving them an option as to whether the conveyance should be set aside wholly or only as to the one tract, it was not error for the trial court to set aside the entire conveyance.

APPEAL from a judgment of the circuit court for Shawano county: JOHN GOODLAND, Circuit Judge. *Affirmed.*

Equitable action to set aside deeds to real estate and quiet title.

The issues passed upon in closing the case by judgment may be concisely stated, as follows: The title to the particular land in question and others, aggregating twenty-two tracts, was in Joseph Kathan at the time of his death, May 26, 1901. He died intestate, leaving as his only heirs his widow, Hattie P. Kathan, and three minor children, the plaintiffs herein. The title to said land was vested in them on the death of Mr. Kathan, subject to six tax deeds thereon in the name of defendant *Pier.* The title to the particular tract was vested in Mr. Kathan many years before he died. It was occupied and used by him, in the main, as a wood lot and for cutting and removing timber therefrom, continuously, for several years after his ownership commenced. During such time a small part was cleared, cultivated, and inclosed by a fence. The land was thereafter used by Mr. Kathan, continuously, down to 1897 in connection with an adjoining tract on which he owned and operated a brickyard. It was thereafter occupied, continuously, down to the time of the commencement of the action by defendant *Eagle River Brick Company* in connection with the brickyard forty, under an agreement with the owner to convey the same to it for $200, as soon as cleared of back taxes. The plaintiffs did not know of the occupancy aforesaid till after the conveyance, hereafter mentioned, to defendant *Comstock.* Some time subsequent to the death of Mr. Kathan, under an agreement with one Colman, county

judge of Vilas county, that title to all the lands should be vested in one George in the interest of plaintiffs and the particular tract then be by him conveyed to the brick company of which Colman was a stockholder, proceedings were had, in form, in the county court of Vilas county, but in fact in the county of Shawano, resulting in such title being, in form, so vested, whereupon George conveyed the particular tract to said brick company pursuant to such agreement.

The first of the aforesaid tax deeds was made and recorded in May, 1889, and the last one in May, 1898. After the proceedings aforesaid, in form vesting the title in George, defendant *Pier* represented and caused to be represented to plaintiffs that the statute of limitations had run in favor of her tax deeds, effectually divesting the title to said lands from plaintiffs and vesting the same in her. She did that for the purpose of inducing them to convey, in form, the twenty-two tracts of land to defendant *Comstock* for the sum of $30. The particular tract then, and at the time of the commencement of this action, was worth at least $200. Relying upon such representations which were in fact false, the tax-deed titles as to such particular land having been extinguished by the statute of limitations, the same having been occupied, as aforesaid, such proceedings were taken in the circuit court for Shawano county that the title of plaintiffs in all the lands for the consideration aforesaid was vested in *Comstock,* the deed to that effect being duly recorded. That was accomplished in the interest of said *Pier* so that she might control the patent title as well as the tax title to all said lands. The next day after the conveyance to said *Comstock* said *Pier* caused the particular tract to be mortgaged to her daughter, the defendant *McIntosh,* ostensibly to secure $250, but in fact to give her standing to commence an action to quiet the title as against the brick company. Such action was commenced, and, during the proceedings therein, plaintiffs became possessed of information as to the possession

aforesaid extinguishing the tax-title claim. Thereupon this action was brought against all parties adversely interested to vacate said deeds made by plaintiffs and the mortgage as well, establish the title to said particular land in plaintiffs according to the facts, and remove all clouds existing thereon created by the deed to George, the deed by him to the brick company, the deed to *Comstock,* and the mortgage.

On such facts judgment was awarded to plaintiffs wholly annulling the deed to *Comstock,* conditioned upon the consideration paid by him as aforesaid being paid into court for his use, and decreeing that the possession by the brick company was lawful but under a license revocable at the pleasure of plaintiffs. Costs were awarded in plaintiffs' favor in one bill against *Comstock, Pier,* and *McIntosh,* and in favor of the brick company against the same parties.

*C. H. Van Alstine,* for the appellants.

For the respondents there was a brief by *Wallrich, Dillett & Larson,* and oral argument by *Albert L. Larson.*

Marshall, J. The findings of fact do not appear, at any point, contrary to the clear preponderance of the evidence. Therefore, by a familiar principle, they must be regarded as verities and the judgment based thereon right, if the conclusions of law are warranted.

If the particular tract of land was in the actual possession of Kathan, deceased, for the full three years after execution and recording of the last tax deed, as found by the trial court, and it seems, as above indicated, that such must be taken as the fact, the tax titles were thereby extinguished, leaving *Kate Pier* without any interest in the land whatever at the time she represented to the Kathan heirs that she had the whole title under her tax deeds for the purpose of inducing them to part with the patent title to *Comstock. Jones v. Collins,* 16 Wis. 594; *Pulford v. Whicher,* 76 Wis. 555, 45 N. W. 418.

It is the settled law, not disputed at all by appellants, that actual or constructive possession of land under a tax deed for the full period of three years is necessary for operation of the statute of limitations, and that interruption of the mere constructive possession, created by recording a tax deed of vacant and unoccupied land, by actual possession for any period by the former owner within the three years after such recording, turns the statute of limitations in favor of the former owner, which, if not interrupted by action on the part of the tax-title claimant or actual possession by him within the three years after the recording of the tax deed, extinguishes all rights under such deed. *Cornell Univ. v. Mead,* 80 Wis. 387, 49 N. W. 815; *Midlothian I. M. Co. v. Belknap,* 108 Wis. 198, 84 N. W. 169.

No question is raised but that the proceedings whereby the title to the land in question was conveyed to George and by him to the brick company were void. It is insisted, however, that the representation made by *Kate Pier* as to her tax titles having extinguished the Kathan title, was not a representation of fact but was a mere legal opinion of the effect of the tax deeds, and so was not fatal to the *Comstock* deed.

We are unable to sustain the contention that the representation was a mere opinion grounded on such pure mistake of law as equity will not relieve from. She knew, or ought to have known, that such a representation, in all reasonable probability, was false, unless the land was vacant and unoccupied at the time of the recording of her tax deeds and so continued during the entire statutory period of three years. Therefore, she knew, or ought to have known, that such representation, by necessary implication, carried the idea that such vacancy and nonoccupancy had existed. So the representation was false and was of a fact material to the transaction which it operated to bring about.

It may be that *Mrs. Pier* did not know there was occupancy of the land preventing the bar of the statute from running in

favor of her tax titles.  It may be that there was no moral
turpitude characterizing the transaction.  Whether there was·
or was not is not material.  In this class of cases fraud in law
is just as effective as fraud in fact.  If one in negotiating·
with another in contractual matters makes misrepresentations
of fact material to the transaction for the purpose of inducing·
such other to act thereon and such other reasonably does so·
act to his prejudice, he may avoid the result on the ground of
fraud,. actual or constructive,—the latter really involving,
generally, mere mistake of fact,—and may have the aid of
equity jurisdiction to that end.  It is not a sufficient answer
to the claim of such other for such person to say he made the·
representations honestly, for it is, in law and equity, as re-
gards avoiding such a transaction, his duty to know whereof
he speaks or not to speak at all as of his knowledge.  This
court has many times spoken on that question.  *Davis v.
Nuzum,* 72 Wis. 439, 40 N. W. 497; *McKinnon v. Vollmar,.*
75 Wis. 82, 43 N. W. 800; *Gunther v. Ullrich,* 82 Wis. 222,.
52 N. W. 88; *Hart v. Moulton,* 104 Wis. 349, 359, 80 N. W.
599; *Krause v. Busacker,* 105 Wis. 350, 81 N. W. 406;
*Zunker v. Kuehn,* 113 Wis. 421, 88 N. W. 605.

The statement made to the effect that it is sufficient to·
put the party making misrepresentations in the wrong, if
he knew, or ought to have known, of their falsity, is not
grounded on principles of actionable negligence, but on the·
idea that he who makes representations to another of material
facts for the purpose of inducing that other to enter into con-
tractual relations with him and which are liable to accomplish
the purpose without want of ordinary care on the part of such
other, is bound at his peril to know whereof he speaks.  He·
ought to know, not because he should not act negligently, but
because under such circumstances he should not speak to the·
facts at all for the purpose of inducing such other to act de-
pending on the truthfulness of what is spoken unless he knows
that his representations are true or expects to assume the·

burden of warrantor of their truthfulness. *Palmer v. Goldberg,* 128 Wis. 103, 111, 107 N. W. 478.

That one may reasonably act, not knowing the facts involved himself,—but on the faith of representations by another who desires to enter into contractual relations with him,—as to conditions not presently observable, as in this case, is so elementary that we will treat it as a matter not requiring extended discussion in this opinion.

The claim is made that the court should not have set aside the entire deed to *Comstock* because of the false representations as to the particular tract of land. It may be that a showing might have been made which would have moved the court, as one of conscience, to require a partial restoration of the consideration paid by *Comstock* and on condition thereof vacate the deed to him as to the one forty only. The court at the close of the evidence fully acquitted *Mrs. Pier* of any actual intention to perpetrate a fraud upon respondents. She was found to have innocently, so far as moral turpitude is concerned, made false representations as to a material fact under such circumstances as to render the resulting transaction voidable. The court concluded a statement of his views thus: "I think there is sufficient ground for a court of equity to set aside the deed so far as it relates to this tract of land." Thereupon respondents' counsel said, addressing the court: "I am perfectly willing for you to make it optional with defendants whether the whole deed shall be set aside." Then counsel for appellants addressed the court, saying: "I prefer to take the judgment of the court." Thereafter findings were filed closing with an order for judgment as we find it.

It may be that after what occurred counsel for appellants should have offered evidence, enabling the court to apportion the consideration paid by *Comstock* so as to require restoration to him of the equitable amount which the particular tract represented. It is the opinion of the court that they should,

and that since they failed to do so, it was not error for the court to deal with the transaction as an entirety, as was done. Certainly, as the case was submitted, there was no basis for a judicial splitting up of the consideration.

In the judgment of the writer the offer of respondents' counsel should, under the circumstances, have been regarded as consenting to restore the whole consideration as a condition of relief from the deeds and mortgage as to the one forty. That is reasonable, it seems, since only the trifling sum of $30 was involved. It is the writer's judgment that General Bragg, the able counsel who represented appellants at the trial, so understood it. He is too good a lawyer to have supposed it required consent, or acceptance of an option on his part to enable the court to act upon such an offer so understood. He doubtless acted as he did, without reflection, through caution as to prejudicing the rights of his clients on appeal respecting the merits of the case, and was surprised when the order for judgment was filed providing for a vacation of the deed as to the whole twenty-two forties, when the only misrepresentation complained of was as to the one forty, and the statute of limitations had, in fact, run as to the other twenty-one forties, so that the vacation of the deed as to them could not be of any benefit to respondents. I think the trial court should have interpreted the offer of respondents' counsel as indicated and ordered judgment vacating the deed as to the one tract on return of the $30, or a less sum if respondents' counsel saw fit to make proof of the equitable amount.

The court, however, is of the opinion, as indicated, that as appellants' counsel elected to have the case submitted the trial court did not commit error; that it was warranted in not requiring restoration of the full consideration for the recovery of the one forty and in not, on its own motion, requiring proof enabling it to equitably divide the consideration so as to deal with the deed and mortgage as to the one forty by itself.

The foregoing covers all questions in the case which appear to be of sufficient moment to require special notice. All have received consideration, resulting, in the opinion of the court, that the judgment should be affirmed.

*By the Court.*—So ordered.

TIMLIN and BARNES, JJ., took no part.