First National Bank of Tigerton, Appellant, vs. Hackett, imp., Respondent.

*November 19—December 8, 1914.*

*False representations in sale of note: Tort action: Fraudulent intent not essential: Good faith: Evidence: Instructions to jury: Special verdict: Damages.*

1. In a tort action based upon false representations in the sale of property plaintiff need not show that the representations were made with fraudulent intent.
2. Evidence in such case that defendant in good faith believed that the representations made were true is immaterial; but where plaintiff had introduced evidence on that question he cannot complain that defendant was allowed to rebut it.
3. Although in such case it was immaterial whether the representations were made in bad faith or not, yet, the action being based on fraud, it was prejudicial error to instruct the jury that there was no claim and no evidence of fraud or bad faith on the part of the defendant.
4. It was prejudicial error also to charge in such case that defendant denied that the alleged representations were made, where in fact defendant did not deny that any of the representations were made, except in a qualified way, and himself testified to making one of them.
5. An instruction that "It is a general rule of law that statements as to the value of property, real or personal, or as to the financial responsibility of persons, made for the purpose of inducing another to buy, may be and generally are mere expressions of opin-

ions," was erroneous as applied to the evidence in this case and was prejudicial.

6. An instruction in this case from which the jury would be likely to understand that unless defendant positively vouched for the truthfulness of the statement made by him it would not constitute a false representation, was erroneous.

7. An instruction from which the jury would be likely to understand that plaintiff did not rely upon defendant's representation as to certain securities sold by defendant, but upon the defendant personally, was misleading in this case, that being under the evidence a question for the jury.

8. Statements by defendant not having been made as upon information or as matter of opinion but as positive statements of fact, it was misleading to charge the jury that if what defendant said "was a truthful statement of his information upon the subject, and given as such only," there was no false representation.

9. It being undisputed that a mortgage by which a note sold by defendant to plaintiff was supposed to be secured was in fact executed by a "dummy" as mortgagor, who had no title to the property and acquired none, and that such mortgage was worthless, it was error to give an instruction calculated to lead the jury to believe that if there was a contract between third persons and the defendant to perfect title in the dummy mortgagor it was sufficient to satisfy defendant's representation that there was a valid mortgage, although none in fact ever existed.

10. In a tort action based upon false representations as to the securities accompanying a note sold by defendant to plaintiff, it was immaterial whether or not the note would have been fully secured if plaintiff had subsequently agreed to an arrangement by which other securities were to be substituted, and no question upon that subject should have been included in the special verdict. Plaintiff had the right to stand upon the cause of action for fraud and was not bound to agree to the substitution of some other cause of action.

11. So, also, it was immaterial and no question should have been submitted to the jury as to whether plaintiff could at one time have sold the note for twenty-five cents on the dollar.

APPEAL from a judgment of the circuit court for Winnebago county: Geo. W. Burnell, Circuit Judge. *Reversed.*

This action was brought against the defendants to recover damages for false representations alleged to have been made in the sale of a note for the sum of $2,500. The complaint sets forth that on the 13th day of May, 1913, one Rose Rubel

Hecht made a promissory note in the sum of $2,500, payable six months after date at the Old National Bank of Oshkosh, to the order of herself, with interest at six per cent. per annum; that the note was indorsed by her, A. S. Hecht, and J. F. Conant, who are named as defendants in the action; that none of the defendants named were served except *R. H. Hackett;* that said *Hackett,* as an inducement to the plaintiff to buy said note, made several representations, all of which were untrue, and that plaintiff was ignorant of the falsity thereof and relied upon such representations.

The defendant *Hackett* answered, denying the making of any false representation, and further set out in detail the history of the transaction and subsequent negotiations between the parties relative to the collection and security going with the note.   It is further alleged that afterwards it was discovered that the securities were not as represented and the indorsers worthless and that further steps were taken by the defendant *Hackett* to obtain additional security of the other defendants and others, and that through the refusal of the plaintiff to surrender the note and accept new notes the deal fell through and the plaintiff, with other holders of other notes, lost an opportunity to collect or secure the same in full.

The jury returned the following verdict:

"(1)  Did the defendant *R. H. Hackett,* at the time of the sale of said note to the plaintiff, make any false representations of a material fact or facts regarding the said note? A. No.

"(2)  If you answer question No. 1 'Yes,' then was such false representation a material inducement to the plaintiff to purchase said note?   A. ———.

"(3)  If you answer question No. 1 'Yes,' then answer this: Did the plaintiff in purchasing said note rely upon such false representation and believe it to be true?   A. ———.

"(4)  If the plaintiff had agreed to the arrangement with Siegmund Hecht under date of December 3, 1912, would the plaintiff's note have been fully secured thereby?   A. Yes.

"(5)  Could the plaintiff at the time of the sale to the Stev-

ens Point Bank have realized about twenty-five per cent. upon its claim? *A.* Yes.

"(6) What is the present value of the plaintiff's note? *A.* We believe twenty-five cents on a dollar."

The appellant made the ordinary motions after verdict and also filed exceptions to rulings of the court and to the charge and refusals to charge, which so far as necessary will be considered hereafter. Plaintiff's motions were denied and defendant's motion for judgment granted, and judgment was entered accordingly in favor of the defendant dismissing the plaintiff's complaint with costs, from which judgment this appeal was taken.

For the appellant there was a brief by *Goodrick & Goodrick,* and oral argument by *A. B. Goodrick.*

For the respondent there was a brief by *Charles and Henry Barber,* and oral argument by *Charles Barber.*

KERWIN, J. The appellant assigns the following errors: (1) The court erred in admitting testimony against plaintiff's objection. (2) The court erred in charging the jury. (3) The court erred in overruling plaintiff's alternative motions. (4) The court erred in overruling plaintiff's motion for a new trial.

The action is brought to recover damages for false representations alleged to have been made by defendant *Hackett* in the sale of a note to plaintiff. The complaint charges false representations made by defendant *Hackett,* reliance thereon by plaintiff, and damages. The answer puts in issue the allegations of the complaint. The verdict returned is set out in the statement of facts.

Briefly stated, the facts leading up to the sale of the note, so far as material to the questions involved, are substantially as follows: Defendant *Hackett* was a loan broker, president of the Farmers' Bank of Omro, stockholder in the First National Bank of Berlin, and stockholder in the plaintiff, *First*

*National Bank of Tigerton.*    Conant was a manufacturer at
Two Rivers, Wisconsin, and was also interested in other busi-
ness concerns.    He entered into a deal with Albert Hecht
and wife for the exchange or sale of certain property in Colo-
rado.    One Halliday, of Chicago, claimed to own land in
Michigan which he desired to trade for Chicago property in
which Conant had an interest.    A written agreement was
drawn up in April, 1912, by which it was agreed to exchange
the Chicago property for the Manistee, Michigan, property
upon conditions.    Conant was to be paid a brokerage fee for
consummating the deal.    Hecht needed $8,500 to enable him
to carry out the deal, but could not raise the money himself.
Conant was brought into the deal and he needed $5,000.    In
other words, Hecht and Conant needed between them $13,500.
To raise the money Conant applied to defendant *Hackett* and
submitted a statement of the conditions of the properties and
the parties.    *Hackett* made two or three trips to Chicago in
the matter and looked up the Rubel estate, in which it was
claimed Rose Rubel Hecht was interested.    There is evidence
that *Hackett* thought Mrs. Hecht had a substantial interest in
the estate.    Under the deal made between Conant, Hecht,
and *Hackett* in Chicago, an alleged mortgage on the property
at Manistee, Michigan, for $6,500 was to be turned over to
*Hackett,* the title to which property was not perfect, but there
was a contract between Halliday and Hecht for the transfer
of the property and providing that the actual transfer would
be made within a short time.    The papers were turned over
to *Hackett,* including what purported to be a first mortgage
upon the Michigan property for $6,500.    The title to the
mortgaged property was not perfect at this time, so that the
$6,500 mortgage was not in fact a first mortgage, although
defendant *Hackett* understood that part of the money which
he paid was to be used by Hecht to clean up the title so that
the mortgage would be a first mortgage.    The securities were
delivered to *Hackett* and the notes taken by him indorsed by

Rose Rubel Hecht, A. S. Hecht, and J. F. Conant. Defendant *Hackett* also got a report of the financial standing of Conant. After it turned out that the title to the Michigan property was not perfected the defendant *Hackett* made a demand upon Conant and Hecht for $6,500 in cash. Some negotiations were had between Conant, Hecht, and defendant *Hackett* looking to a new arrangement whereby other properties were to be substituted for the Michigan property covered by the $6,500 mortgage, and the plaintiff was asked to enter into this deal, but refused to do so.

It appears that the deal entered into at Chicago by which defendant *Hackett* loaned $13,500 was what was termed a three-cornered deal between Hecht, Conant, and Halliday, by which certain properties were to be sold or exchanged and Halliday was to transfer to Hecht a farm of over 300 acres at Manistee, Michigan, in exchange for hotel property in Chicago. The deal was closed between *Hackett,* Hecht, and Conant May 13, 1912, and resulted in *Hackett* loaning Hecht and Conant $13,500, *Hackett* taking notes aggregating $15,500, viz. one note for $5,000, three for $2,500, one for $2,000, and one for $1,000. Defendant *Hackett* sold $14,500 of these notes, the one sold to plaintiff being one, and Conant sold $1,000. This paper was signed by Rose Rubel Hecht and indorsed by A. S. Hecht and J. F. Conant. A trust agreement was executed by which defendant *Hackett* was to be trustee. To secure the notes taken by defendant *Hackett* mortgages were taken by *Hackett* as trustee as follows: What purported to be a first mortgage of $6,500 on a Michigan farm and two second mortgages of $4,500 each on Colorado property. It seems that these mortgages were signed by one who had no title at the time, but who probably expected to acquire title thereafter. *Hackett* paid $13,500 to Conant and Hecht in Chicago May 13, 1912, and it appears from the evidence that defendant *Hackett* took the three mortgages on the strength of statements of the borrowers that subsequent

to turning over the money deeds would pass which would make the mortgages, or some of them, good.

1. It is claimed by respondent that the action is on contract, and that there is no question of fraud in the case, that the appellant opened the door to the question of good faith on the part of *Hackett,* therefore cannot complain of the ruling of the court under the first assignment of error.

We think it clear under the pleadings and evidence that the action is not one upon contract, but in tort for fraud based upon false representations in the sale of property. But it does not follow that because the action is for fraud it must be shown, in order to make the representations actionable, that they were made with fraudulent intent. *Montreal River L. Co. v. Mihills,* 80 Wis. 540, 50 N. W. 507; *Cotzhausen v. Simon,* 47 Wis. 103, 1 N. W. 473; *Bird v. Kleiner,* 41 Wis. 134. A party making representations as facts must be held to respond for injury done in assuming to know and represent as facts things which did not actually exist, but upon which the other party relied to his damage. *Steckbauer v. Leykom,* 130 Wis. 438, 110 N. W. 217; *Standard Mfg. Co. v. Slot,* 121 Wis. 14, 98 N. W. 923. In speaking upon the subject in *Krause v. Busacker,* 105 Wis. 350 (81 N. W. 406), at page 354 this court said:

"If the representations were material and false, and the maker thereof either knew or ought to have known that they were false, or if he made them recklessly, with no knowledge on the subject, and the injured party relied upon them as true, without the present means of knowledge of their falsity, and suffered damage thereby, then the fraud is complete."

In *Zunker v. Kuehn,* 113 Wis. 421 (88 N. W. 605), at page 424 it is said: "False representations of facts or conditions which have induced the making of a contract may be actionable although not shown to have been made wilfully, or with fraudulent intent," citing *Montreal River L. Co. v. Mihills,* 80 Wis. 540, 50 N. W. 507; *Gunther v. Ullrich,* 82

Wis. 222, 52 N. W. 88; *Porter v. Beattie,* 88 Wis. 22, 59 N. W. 499.

There is an abundance of evidence in this case that the representations complained of were made by defendant *Hackett,* and the question was not whether they were made in good faith, but whether *Hackett* did in fact make them, whether they were material and false, relied upon by plaintiff, and caused the injury complained of. The evidence admitted over plaintiff's objection and complained of under this assignment of error was as to whether *Hackett* in good faith believed the representations made were true. This evidence was immaterial and should not have been admitted. *Zunker v. Kuehn, supra; Krause v. Busacker, supra; Hart v. Moulton,* 104 Wis. 349, 80 N. W. 599; *Palmer v. Goldberg,* 128 Wis. 103, 107 N. W. 478. The plaintiff, however, called defendant *Hackett* under sec. 4068, Stats., and examined him respecting the security, and among other questions put the following: "You believed at that time, I presume, that this collateral security was good security for that loan?" This question was objected to as immaterial and the objection overruled. The evidence was immaterial, but the court permitted the question answered and thus opened the door for evidence of good faith on the part of defendant *Hackett.* There was other similar evidence on the subject offered by plaintiff and admitted over defendant's objection.

The plaintiff, having put in evidence upon this issue, cannot complain that defendant was allowed to rebut it.

2. The court charged the jury respecting the first question of the special verdict as follows:

"*Mr. Hackett* denies that any such representations were made. *Mr. Hackett* denies having told him any of these things as alleged in the complaint."

This part of the charge was misleading and prejudicial. The evidence shows that *Hackett* did not deny that any of the representations were made, except in a qualified way. One of the representations charged was "that said notes are fur-

ther secured by a first mortgage of $6,500 on a tract of land containing about 300 acres near Manistee, Michigan, worth $16,000." The representations made by *Hackett* to the plaintiff bank were made by 'phone and in a conversation over the 'phone with Mr. Wojahn, cashier of the plaintiff bank. Defendant *Hackett* testified: "I told him I had a first mortgage for $6,500 on a tract of about 300 acres of land in Michigan estimated to be worth about $16,000, I think." *Mr. Hackett* afterwards makes a sweeping denial as to all of the representations, but from the evidence this appears to be based upon the fact, as he testifies, that when he talked with Mr. Wojahn over the 'phone Mr. Wojahn stopped him before he got through with all he desired to say regarding the securities.

The court further instructed the jury:

"In this case there is no claim of fraud or bad faith on the part of the defendant *Hackett,* and there is no evidence of fraud or bad faith on his part."

This was error and clearly prejudicial. The action was based upon fraud. If *Mr. Hackett* made the representations, which were material, and they were false, relied upon by the plaintiff, and caused the damage, it was immaterial whether they were made in bad faith or not.

The court further instructed the jury:

"It is a general rule of law that statements as to the value of property, real or personal, or as to the financial responsibility of persons, made for the purpose of inducing another to buy, may be and generally are mere expressions of opinions."

This was error as applied to the testimony in the case and prejudicial. *Palmer v. Goldberg,* 128 Wis. 103, 107 N. W. 478; *McKinnon v. Vollmar,* 75 Wis. 82, 43 N. W. 800; *Kathan v. Comstock,* 140 Wis. 427, 122 N. W. 1044.

The court further charged the jury:

"If *Mr. Hackett* in his conversation with Mr. Wojahn only truthfully stated his own knowledge upon the subject and did not make the statement as a positive and absolute fact and did

not positively vouch for the truthfulness of the same, any statement so made, even if untrue, would not constitute a false representation."

It was not necessary that *Mr. Hackett* should vouch for the truthfulness of the statement made. It was sufficient that he made a positive statement of the facts and did not state it as being made upon information. From this charge the jury would be likely to understand that unless *Mr. Hackett* positively vouched for the truthfulness of the statement it would not constitute a false representation.

The court instructed the jury:

"The defendant also claims that Mr. Wojahn in his testimony admits shutting *Mr. Hackett* off and telling him that he might send the note, but with the understanding that he should be liable thereon."

This was not a correct statement of Mr. Wojahn's evidence. Wojahn testified:

"Then he began to tell me about the Greeley property, and I said there was no need going any farther. I did not know the indorsers or the securities. I says, I am kind of loaned up, I says, but I said if I can look to you at all times to see that the loan is made good, why send her along." . . . "One thing I haven't mentioned, that is: When I stopped him I said I did not know anything about the signers or indorsers or any of the securities that you mention to me, so I said get plenty of security for yourself for I will always look to you for payment of that note for the trustee. I didn't use the word 'trustee,' I said I will look to you. I am looking to him today."

The jury would be likely to understand from this charge that Mr. Wojahn did not rely upon representations as to securities, but upon *Hackett* personally. The instruction was misleading. It was for the jury to say upon all the evidence whether Mr. Wojahn did not intend to rely upon the securities as represented and not upon *Hackett* personally.

In charging as to the Michigan property the court said:

"If you find that the statements made by *Mr. Hackett* in regard to this property were true in substance, or that what

he said was a truthful statement of his information upon the subject, and given as such only, you must find that there was no false representation in this regard, and as to this subject you must answer the first question 'No.' "

This instruction was misleading. What *Mr. Hackett* said about the Michigan mortgage was not said upon information or as matter of opinion, but was a positive statement of the facts, and the material question was whether the statements made by *Hackett* regarding the mortgage were true.

The court further instructed the jury:

"If at the time the mortgage was given there was a valid, binding contract which could have been enforced and whereby Mr. Halliday could have been compelled to have given a deed of the property, then there was in the eye of the law a valid mortgage upon the same. The mere fact that afterwards *Mr. Hackett* or the other parties neglected to enforce the contract, or by neglect lost rights in reference to the same, would not affect the validity of the mortgage at the time taken. If the mortgage was valid in law at the time the representation was made, you must find that there was no false representation in respect thereto."

This instruction was well calculated to lead the jury to believe that there was some kind of a contract which amounted to a mortgage on the Michigan property which might be enforced, and that if a contract in fact existed to perfect title in the "dummy" mortgagor, it was sufficient to satisfy the representation that there was a valid mortgage, although none in fact ever existed. It is undisputed that the $6,500 alleged mortgage on the Michigan property was executed by a "dummy" as mortgagor, who had no title to the property and acquired none, and that such mortgage was worthless.

Counsel for appellant also excepted to the whole charge as being too favorable to defendant *Hackett*. The portions of the charge heretofore treated show its general character and further discussion of it is unnecessary.

3. Error is assigned because the court refused to change the answer of the jury to the fourth question of the special

verdict from "Yes" to "No." This question should not have been submitted and has no proper place in the case. The plaintiff had a right to stand upon its cause of action for fraud and was not obliged to enter into any negotiations resulting in a substitution of its existing cause of action for some other. All the evidence respecting this transaction should have been excluded and no question submitted to the jury upon the point.

Counsel for appellant also moved to change the answers to the first, fifth, and sixth questions of the special verdict on the ground that the answers to these questions are unsupported by the evidence. The issue raised by the fifth question was immaterial. Plaintiff was not obliged to sell the note for twenty-five cents on the dollar or for any sum less than face and interest. Plaintiff offered the note in court for the use of defendant *Hackett*.

Whether there was sufficient evidence to support the answers to the first and sixth questions of the special verdict we need not and do not determine.

On account of prejudicial error committed on the trial and discussed in this opinion the judgment must be reversed.

*By the Court.*—The judgment of the court below is reversed, and the cause remanded for a new trial.