[No. 7942.]

## FOUNTAIN VALLEY LAND AND IRRIGATION COMPANY V. WAGONER.

1.  DECEIT—*Complaint—Sufficiency.*   A complaint alleging the purchase by plaintiff from defendant of particular lands which are described, that plaintiff was induced to enter into the contract by representations of existing facts which the defendants knew to be false, setting forth with particularity the representations, to-wit defendant's title to the lands, that they were not traversed by any ditches except those appertaining thereto, and that the water rights to be conveyed therewith were sufficient for the irrigation thereof, is sufficient in law. (57.)

That a conveyance is not to be delivered until one-half the purchase money, not yet matured, is paid, is immaterial in an action instituted before payment thereof. (57.)

2.  CONTRACT—*Rescission for Fraud.*   Defendant, to induce the purchase of lands by plaintiff, represented that it had a perfect title thereto, that it was free of encumbrance, or other burden, and that plaintiff would acquire by his purchase the right to water sufficient to irrigate the land.   The title in fact stood in one Johnston, the president of the defendant, subject to a first encumbrance of more than $8,000, then in part overdue, and no arrangement for the release of which had been made, and the release of which, if made, would have subjected the lands to another encumbrance of $500,000. The land was burdened with an irrigating ditch, traversing it diagonally, greatly interfering with its cultivation, and which at the time of his purchase plaintiff was given to understand pertained to the land.   *Held*, that plaintiff was entitled to rescind his contract and recover what he had paid, upon coming to a knowledge of the facts; that he was not under duty to

continue the payments which he had stipulated, and rely upon the vendor to procure the discharge of the encumbrances, and relieve the land of the burden of the irrigating ditch, even though the defendant was not shown to be insolvent. False representations inducing a contract afford an action, though they are not set down in the contract. (58-63.)

3. ——— Ratification—Delaying Action. One who, having been induced to enter into a contract for the purchase of lands by the fraudulent misrepresentations of the vendor, is not held to have ratified the contract, by delaying the surrender of possession, and the institution of his action, where such delays are induced by promises of adjustment made by the vendor. (64.)

4. APPEAL AND ERROR—Sufficiency of Testimony. Bill to rescind a contract for the purchase of lands, to the possession of which plaintiff had been admitted. An allowance was made for the rentals, upon evidence given by plaintiff. The defendant having given no evidence upon this issue, the judgment was affirmed, though defendant's evidence was meagre and unsatisfactory. (65.)

*Error to El Paso District Court.*  Hon. J. W. SHEAFOR, Judge.

Mr. WILLIS L. STRACHAN and Mr. HENRY MCALLISTER, JR., for plaintiff in error.

Mr. DUNBAR F. CARPENTER and Mr. H. G. LUNT for defendant in error.

Mr. JUSTICE HILL delivered the opinion of the court.

The defendant in error brought this action to recover $2,500 paid to the plaintiff in error as a part of the purchase price for sixty acres of land and water purchased by him, from it, under contracts bearing date October the 21st, 1910, which he seeks to have cancelled, together with certain promissory notes given in part payment of the purchase price, etc., alleging that his execution of the contracts was procured through the false and fraudulent representations of the defendant, relied upon by him, etc. He alleges his previous offer and willingness to surrender possession and account for rents, etc. Trial was to the court, which found the issues in favor of the plaintiff, and entered its decree cancelling the contracts, and notes, and awarding to the plaintiff a money judgment for $1,893.56.

It is urged that the complaint fails to state a cause of action, and that the court erred in overruling the demurrer, which raises this question. For convenience we will refer to the parties as designated in the pleadings. The complaint alleges, in part, that the plaintiff's execution of these contracts was secured through the false and fraudulent representations of the defendant, well known to it at the time the contracts were made, he, the plaintiff, relying thereon, etc. It sets forth in detail what these false and fraudulent representations consisted of, the greater part of which relates to facts, which, it is alleged, the defendant represented then existed, to-wit, its clear-title to all of the land sold, its condition as being free from ditches except those appertaining thereto, and the kind of water rights which it had, which were to go with the land under the water contract. We do not think the complaint subject to demurrer in failing to state a cause of action. Its allegation in this respect will be further considered in connection with the evidence which it is claimed is insufficient to support the findings.

It is urged that inasmuch as the land contract did not call for a deed to be furnished at the time it was executed, but only after half of the purchase price of $8,220 was paid, which, in part, was to be in installments, that the allegations and proof of the false representations as to title are immaterial, even though true. Cases are cited which, it is alleged, sustain this conclusion. We do not think they go to this extent, or hold further than that a person in good faith, under certain circumstances, can contract to sell and deliver title in the future to lands which, at the time, he does not own, when he has a contract for its purchase or equitable grounds by which he is entitled to believe he will secure title before his grantee is to receive it, or for the sale of land on which there may be an incumbrance when he is, or thinks he is, able and intends to have it removed before his grantee is entitled to receive his title; but that is not the question here; it is, was the plaintiff induced to

enter into this contract through the false and fraudulent representations of the defendant, and if so, and had he known the real facts, would he have entered into the contracts, and upon account of these false and fraudulent representations has he been, or will he be, injured to the extent that he is entitled to rescind.

The testimony is conclusive that at the time of the execution of the contracts the title to this land did not stand in the name of the defendant, but was in the name of W. C. Johnston; that there was a deed of trust upon this and other lands to secure his personal notes in the sum of $10,-000; that there also was a deed to Wilson brothers which had been previously executed by Johnston's grantor, for a right of way for a ditch twenty-four feet wide, running diagonally through this land, consuming approximately 1.27 acres of land, which, under the contract, the defendant agreed to convey to the plaintiff clear. This right of way deed was not then recorded, but was filed for record on March 11th, 1910; possession had been taken, however, and the ditch constructed before the execution of the contracts to the plaintiff, who, in substance, testifies it was his understanding that this ditch was for the sole use of the land purchased by him. There is testimony to the effect that the defendant knew of this right of way being owned by the Wilsons at and before its execution of these contracts. At the trial, which was in May, 1912, Mr. McRay, who had deeded this and other lands to Johnston and took his notes for $10,000 as part of the purchase price, which was secured by a deed of trust thereon, states that there were three notes of $3,333 each, dated February 14th, 1910, payable, respectively, October the 1st, 1910, 1911 and 1912, with interest; that Mr. Johnston was in default in his payments on the notes due October 1st, 1910, and 1911; that at the time of the trial he was owing on these two notes about $5,500 past due. This, with all of the third, would leave about $8,800 as a first lien upon the land. Witness states

that he had made demand on Johnston for the money, but had not got it; that Johnston told him he did not have the money to pay him; that he is the same McRay who conveyed the right of way for the ditch through this and other lands to the Wilsons in 1907, and that he received $500 for that conveyance; that he had had conversations with Johnston previous to the date of the contracts in issue concerning his, McRay's, sale of this right of way; that is, as to its value, which had to Johnston's knowledge been settled by a board of arbiters; that the ditch ran through the land when he conveyed it to Johnston; that Johnston had been over it, he supposed, about five hundred times before he bought it; that he had not extended the time of payment on any of these notes; that he had agreed he would, if $2,500 was paid, but it had not been paid; that the only reason he knew why it had not been paid was what Johnston told him, viz.: that he had not got the money; that he had no arrangement that he should release parts of this land on payment of a certain amount; that he was willing to accept his money; that he had contemplated renewing the last two notes, also that he had threatened foreclosure. The plaintiff testified that he first learned Wilsons owned the ditch when one of them rode up there in May, 1910, and told him they had a deed for a right of way through there; that this ditch cuts through the land some places four feet deep, and there are dams at places; that he had to flume across it to irrigate the lower part of this place; that to cross it with a wagon he had to either dig a place and fill in, or build a bridge; that it impedes cultivation, cuts part of the land in a kind of a three-cornered shape and makes it bad for plowing, seeding, cutting hay, running ditches, etc.

It is admitted that the defendant promised to pay the 1910 taxes upon this land, and that without this promise, in order to be in shape to be in a position to fulfill its contract with the plaintiff, it would be required to do so. It is conceded that these taxes had not been paid at the time

of the trial in 1912. The defendant's evidence discloses that Mr. Johnston was its president at the time and ever since the execution of the contract with the plaintiff. In addition to denying all false representations, etc., he testified that while the title to this land stood in his name, the company was its owner; that he held it as trustee for the company; that the company had a bond issue of $500,000 secured by incumbrance on all lands it owned or thereafter acquired; that in order to prevent this, and some other lands that he had bought, from coming under the bond issue before it came under the private trust deed given back to secure a part of the purchase price, it was deeded to him; that is, they deeded to him, and he gave a trust deed to secure the unpaid portion of the purchase price; that he then put a proclamation of trust in the safe for the Fountain Valley Land and Irrigation Company, to be recorded, which was afterwards recorded; that is, he gave a declaration of trust to the company covering this land, as he had others. This declaration of trust was placed of record December 23, 1911, and covers several tracts of land, including the land in question, and declares that while the legal title is in Johnston, they are in fact the property of the defendant, etc. The witness' excuse for not paying the 1910 taxes was that the property had been assessed too high, and that he was waiting to have it adjusted, had not done so yet, but for this reason had still refused to pay the taxes. He also admits that the defendant had never furnished the plaintiff with an abstract for the property, and had never secured the location of a public road adjacent to this land, although he had promised the plaintiff prior to the execution of the contracts that he would do so. The witness states that the company had an arrangement pertaining to its blanket mortgage, so-called, given on all its land and any thereafter acquired, to secure its $500,000 bond issue, whereby when any land was sold it could turn in the money or the notes and deed of trust given to secure the purchase

price, and secure a release upon that particular tract. Whether this is provided for in the instrument itself, he does not state. He also said that the company was financially able to pay Mr. McRay.

Leaving the conflict in the evidence and the deductions of fraud to be gathered from it, to be determined by the trial court, the object in quoting the substance of this portion of the testimony is to disclose what the plaintiff would have ascertained, had he not relied upon the representations of the defendant at the time he entered into these contracts, and whether these facts are material, and whether he would have entered into the contracts had he known the facts, and whether he is entitled to rescind after ascertaining that they were untrue. Some of the alleged representations, and which the court evidently found the plaintiff was lead to believe, are, that the defendant owned the land; that it was clear of incumbrance or other lien or burden; that the defendant had, and that the plaintiff was buying, good water rights sufficient to properly irrigate it, etc. There is testimony which discloses to the contrary; that the title to the land did not stand in the name of the company, but that it stood in the name of Mr. Johnston subject to a first incumbrance to secure between eight and nine thousand dollars, and that no arrangement had been made for its release; that a part of this indebtedness was past due at the time these contracts were entered into; that the land was burdened with the irrigation ditch of others conveyed by deed, which called for a strip running diagonally through this land twenty-four feet wide, and taking 1.27 acres out of it; that this fact was known to the defendant, and unknown to the plaintiff, and that it greatly impedes the cultivation of the land, making the construction of flumes and bridges necessary, etc.; that the water rights were not as represented and were not sufficient for the purposes intended. Had the plaintiff gone further in his investigation, and could have ascertained the facts, according to the defendant's tes-

timony, he would have found that while the title to this land, except that portion for the ditch, stood in the name of Johnston, subject to the McRay incumbrance, it, in fact, was by him declared to be the property of the defendant, but in such case it would be subject to another incumbrance to secure its indebtedness in the sum of $500,000. Under such circumstances we cannot agree that the representations were immaterial, or that the plaintiff would have entered into the contracts, had these representations not been made, and had he not relied thereon, or that he has not been injured upon account thereof. As to his injury, 'tis true that Mr. Johnston testifies that the company is able to take care of these incumbrances, but Mr. McRay testifies that they failed to make the payments to him as they fell due; that Mr. Johnston told him he did not have the money, and that he, McRay, had threatened foreclosure; that no arrangements had been made with him to secure a release of this tract, and there is no testimony that any arrangement had been made or could be made to secure title to the Wilson right of way. If material, the excuse given by Mr. Johnston for the company's failure to pay the 1910 taxes is in reality no excuse at all. Our statutes provide a method to have adjusted the question of over-valuation, the time for which, in this instance, had long since expired prior to this trial. Counsel argue that because these representations are not contained in the contracts, and because it is not alleged and shown that the defendant was bankrupt, that all of these representations should go for naught. The substance of this argument is, that while it may be true that this land is incumbered with others to secure, first, about $8,800, second, a half million dollars, and while it is true that a part of it has been conveyed to others for a right of way for a ditch, yet, regardless of these facts, plaintiff is not injured, but should have continued to make his payments, as per the terms of the contract, until the time comes that he is entitled to a deed as therein called for, and then after

making the payments he should rely upon the company con-
tract to secure a release of these two mortgages and to
relieve the land from the burden of the right of way for
the ditch, for the reason that he is not injured until the
time comes that he is entitled to his deed.  Eliminating the
water question and the right of way for the Wilson ditch,
which he never had possession of, although the contract pur-
ports to give him possession of all the land, had the plain-
tiff known all these other facts and contracted accordingly,
he might have been so held, and upon account thereof be
bound thereby and be compelled to rely upon the state-
ments of Mr. Johnston pertaining to the company's hopes
of relief from other litigation, the revenues to be derived
from the formation of an irrigation district, etc., with which
to take care of its obligations, including this one, but the
plaintiff having contracted under the assumption of a dif-
ferent state of facts alleged to have been represented to
him by the defendant, and which, if true, entitled him to
the relief prayed for; and the trial court having so found,
and there being testimony from which such a deduction
can be arrived at, it is not the province of this court to dis-
turb its findings.  For authorities which, in principle, sus-
tain these conclusions see: *Kathan v. Comstock,* 140 Wis.
427, 122 N. W. 1044, 28 L. R. A. (N. S.) 201, and cases
there cited in the notes; *Faulkner v. Wassmer,* 77 N. J. Eq.
537, 77 Atl. 341, 30 L. R. A. (N. S.) 872; *Durkin v. Cob-
leigh,* 156 Mass. 108, 30 N. E. 474, 17 L. R. A. 270, 32 Am.
St. Rep. 436; *Melick v. Cross,* 62 N. J. Eq. 545, 51 Atl. 16;
*Ft. Payne Coal & Iron Co. v. Webster,* 163 Mass. 134, 39
N. E. 786; *Siglin v. Frost,* 173 Mass. 284, 53 N. E. 820;
*Townshend v. Goodfellow,* 40 Minn. 312, 41 N. W. 1056,
3 L. R. A. 739, 12 Am. St. Rep. 736; *Daly v. Bernstein,*
6 N. M. 380, 28 Pac. 764; Maupin on Marketable Title to
Real Estate, p. 244; 39 Cyc. 1417.

The defendant contends that even though the facts
were as claimed by the plaintiff, yet after knowledge of

them he ratified the contracts by not offering to surrender as soon as they were discovered, and in failing to immediately bring his suit. The plaintiff testified that in May, 1911, he first learned that the land was burdened by a right of way for the Wilson ditch, and which ditch was for the use of others; that in the month of July, 1911, he, for the first time, learned that the title to the land was not in the defendant, and that it was not free from liens and incumbrances. He testified, in substance, that as soon as he learned these facts he took them up with the agents and officers of the defendant, and that they promised to give him another piece of land; that they also promised to furnish him an abstract and to give him a deed; that these negotiations "hung on," as he terms it, he seeing the agent every week or two, and being told by him, "Well, the papers ain't back yet," etc., and so it thus kept running until in a conversation with Mr. Johnston one evening, when pressing him regarding it, he, Johnston, said there was nothing to it, but that they again offered him another or third piece of land, which he declined to consider, etc., and at about which time his counsel wrote a letter to the company bearing date November 20th, 1911, which demanded the return of the $2,500 paid and cancellation of the contracts and notes. This letter includes an offer to surrender possession, and to pay a reasonable rental therefor; states if not complied with within a reasonable time, suit will be brought. December 9th, following, the defendant answered, and declined to comply. This suit was instituted on December the 29th, following. Under this state of facts we are of opinion that any delay by the plaintiff, in offering to surrender possession, or in the institution of his suit, etc., was brought about through the actions of the defendant in leading him to believe that the entire matter would be amicably adjusted, and that the offer was made to surrender possession, and the suit brought within a reasonable time after it was ascertained that the defendant did not intend to do any-

thing about it.  39 Cyc. 1428; *Faulkner v. Wassmer,* 77 N. J. Eq. 537, 77 Atl. 341, 30 L. R. A. 872; *Rackemann v. Riverbank Imp. Co.,* 167 Mass. 1, 44 N. E. 990, 57 Am. St. 427.

It is claimed that the court erred in finding that the rental value of the property for the period occupied by plaintiff did not exceed $863.10.  Counsel claim there is no evidence of its rental value or market value, and that it is not proper to infer that its market value is the same as the price called for in the contract.  It may be conceded that the evidence on this question is quite meager.  The price that the plaintiff was to pay and which the defendant agreed to sell for is in evidence.  The substance of plaintiff's testimony is that upon account of conditions heretofore referred to, it was not of this value.  The plaintiff also furnished testimony as to the amount and kind of crops raised, and, in most instances, the prices received therefor, from all of which it appears the court found the rental value as above stated.  It is not claimed the plaintiff's testimony shows it was more.  The defendant offered no testimony upon the question.  Under such circumstances it cannot be heard to complain concerning the amount awarded for this purpose.  *Eaches v. Johnston,* 46 Colo. 457, 104. Pac. 940.

Counsel for plaintiff urge that the defendant's failure to perform its promise pertaining to a county road adjacent to this land is alone sufficient to justify a rescission.  They claim that although not in the written contract, it was made as an inducement to secure the plaintiff's execution of the contracts, and for this reason is a valid, independent, collateral agreement.  We deem it unnecessary to determine this question, or, if counsel are correct, whether for this reason or the failure to pay taxes, the plaintiff would be entitled to rescind.  We are limiting our consideration of the right of the plaintiff to rescind to the representations alleged to have been made by the defendant concerning matters in existence at the time of the execution of the contracts, and not to promises to be fulfilled in the future.  The

testimony pertaining to the road and the taxes was received without objection, and was proper to be considered as bearing upon the bad faith of the agents and officers of the defendant company in making the representations as to the facts alleged to be in existence at the time of the execution of the contracts.

The judgment is affirmed.

*Affirmed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE TELLER concur.